IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 17, 2002 Session

## RONALD TROY AGEE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-B-997      J. Randall Wyatt, Jr., Judge**

**No. M2001-02420-CCA-R3-PC  - Filed January 8, 2003**

Petitioner, Ronald Troy Agee, appeals the trial court's denial of his petition for post-conviction relief, in which he alleges ineffective assistance of counsel.  Petitioner entered guilty pleas to one count of conspiracy to distribute over 300 pounds of marijuana and one count of possession with intent to deliver over seventy pounds of marijuana and received an effective sentence of thirty-five years.  The indictment alleges that the conspiracy, charged in count one, commenced in August of 1997 and continued through December of 1999.  In 1998, the legislature amended the law, designating conspiracy to deliver 300 or more pounds of marijuana as a Class A felony offense. Prior to the enactment of the new statute, the offense was a Class B felony.  Petitioner argues that his trial counsel was ineffective in setting out the range of punishment for the offense charged. Consequently, Petitioner argues, he entered a guilty plea to Class A felony, rather than a Class B felony, and his sentence exceeds the maximum sentence available for a Range II offender of a Class B felony.  We conclude that Petitioner received the effective assistance of counsel and that his pleas were entered voluntarily and intelligently.  The judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

William E. Porter, Nashville, Tennessee, for the appellant, Ronald Troy Agee.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and John Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

Effective July 1, 1998, conspiracy to deliver over 300 pounds of marijuana, the offense with which Petitioner is charged in count one of the indictment, became a Class A felony. *See* Tenn. Code Ann. § 39-17-417(j)(13)(A) (Supp. 2002). Prior to the change in the law, conspiracy to distribute over 700 pounds of marijuana was a Class A felony, and conspiracy to distribute over 300 pounds of marijuana was a Class B felony. *See* Tenn. Code Ann. § 39-17-417 (1997). The sentencing range for a Range II offender of a Class A felony is not less than twenty-five years and not more than forty years, and the sentencing range for a Range II offender of a Class B felony is not less than twelve years and not more than twenty years. Tenn. Code Ann. § 40-35-112(b)(1), (2) (1997).

In exchange for his guilty plea to conspiracy to deliver over 300 pounds of marijuana, Petitioner received a thirty-five year sentence. For his guilty plea to possession with intent to deliver over seventy pounds of marijuana, Petitioner received a sentence of twenty years. Petitioner and the State agreed that the sentences would run concurrently, resulting in an effective sentence of thirty-five years. The State also agreed to release a lien on Petitioner's home in Murfreesboro and that no seizures or forfeitures would be sought against his wife's vehicles. The State further agreed not to prosecute an arson charge against Petitioner.

**Post-Conviction Hearing**

In his petition for post-conviction relief, Petitioner argues that his counsel incorrectly set out in the plea petition the class of the felony, and thereby the range of punishment, for the offense to which he pled guilty. As a result, Petitioner argues that his guilty plea to count one of the indictment was erroneous and prejudicial. At the post-conviction hearing, Petitioner testified that on the eve of trial, after a jury was impaneled, he received an offer for a negotiated plea agreement from the State. Petitioner accepted the plea offer and received a thirty-five year sentence. The range of punishment for count one, as set out by his attorney in the plea agreement, was for a Class A felony. Petitioner testified that he discovered only after he entered his pleas that count one had previously been a Class B felony. Petitioner further testified that his attorneys never discussed with him the issue of whether count one was a Class A felony or a Class B felony or the effect that the class of felony would have on his potential sentence.

Petitioner's trial counsel was William D. Massey, who also testified at the post-conviction hearing. Mr. Massey testified that he has been licensed to practice law in Tennessee for twenty years, and that for the past ten years, he has practiced exclusively criminal law. His practice is located in Memphis, and in handling Petitioner's case, he had the assistance of Lorna McClusky, a partner at his office, and John Herbison, a practicing attorney in Nashville. Mr. Massey testified that he had sufficient time to prepare for trial, and he had sufficient communications with Petitioner. Mr. Massey testified that the lawyers discussed in depth with each other whether count one of the

indictment was a Class A or Class B felony, and they discussed the issue "at length" with Petitioner. Mr. Massey explained to Petitioner that there was an issue as to what class of felony count one was and that the only way to resolve the issue would be to have a sentencing hearing, which in his case, required a trial and conviction. Mr. Massey also explained that the significance of the class of felony was the impact it would have on Petitioner's sentence.

Mr. Massey also discussed the issue with the prosecutor, John Zimmerman. Mr. Zimmerman believed that because conspiracy is an ongoing crime, and Petitioner continued the conspiracy beyond the time when the legislature lowered the threshold weight of marijuana necessary to constitute a Class A felony, Petitioner could be sentenced as a Class A felon. Mr. Massey testified that he tended to agree with the prosecutor. He testified that regardless of the class of felony, however, Petitioner's choices at the time of the offer included: (1) accepting the State's offer of thirty-five years, or (2) proceeding to trial.

Mr. Massey testified that the case involved multiple defendants, some of whom are members of Petitioner's family. The State's offer demanded that all of the defendants plead guilty in order for any of them to accept it. Mr. Massey testified that the prosecutor "could have offered [Petitioner] sixty years, and before he'd put his family to this trial, [he] would have fallen on his own sword. He would have pled to sacrifice himself for his family." Mr. Massey further testified that one of Petitioner's co-defendants, Michelle Beasly, had already entered a plea and was going to testify against Petitioner, which impacted Petitioner's odds of success and increased his family's exposure to criminal penalties. Mr. Massey also testified that another factor in deciding whether to accept the State's plea offer was Petitioner's significant criminal history and potential status as a Range III persistent offender. Even if, after a jury conviction, the trial court determined that count one of the indictment was a Class B felony offense, rather than a Class A felony offense, Petitioner faced a more severe punishment as a persistent or career offender than if he accepted the State's plea offer. Had Petitioner been convicted by a jury and sentenced as a Range III offender to thirty years at forty-five percent, the maximum sentence in the range for a Class B felony, he would not be eligible for parole for thirteen and a half years. Had he been sentenced as a career offender, he would not be eligible for parole for eighteen years. Petitioner was offered thirty-five years at thirty-five percent, as a Range II offender, making him eligible for parole in twelve years and three months.

Lorna McClusky, Mr. Massey's law partner, also testified at the post-conviction hearing. She testified that she and the other two lawyers discussed the issue of whether count one was a Class A or Class B felony early in the preparation of Petitioner's case, and they discussed the issue with Petitioner before he entered his guilty plea. Ms. McClusky testified that Petitioner's strongest motivation for accepting the State's plea offer was the impact that going to trial might have had on offers to his family members to enter negotiated plea agreements.

Attorney John Herbison, who also represented Petitioner, testified that he communicated with Petitioner early in this case and frequently. Mr. Herbison disagreed with the prosecutor and Mr. Massey. Mr. Herbison believed that because overt acts in furtherance of the conspiracy were committed prior to the change in the law, the *ex post facto* clauses of the state and federal

constitutions would require the offense to be treated as a Class B felony. He testified that he discussed the point with both co-counsel as well as Petitioner. At some point, even Petitioner's wife and father were present for the discussions. Mr. Herbison decided, as a tactical matter, not to alert the State to the issue prior to when jeopardy attached because he was concerned that another indictment might be brought alleging a conspiracy beginning after the effective date of the change in the law. Before Petitioner entered his guilty pleas and after the State made its offer, Mr. Herbision indicated to Petitioner that he had concerns about whether thirty-five years was, in fact, a legal sentence. Mr. Herbison also compared release eligibility under the offer and under the circumstances of a jury conviction. Mr. Herbison believed that if convicted, Petitioner's criminal history would qualify him as a career offender. If convicted of a Class B felony and sentenced as a career offender, Petitioner could have expected to receive a sentence of thirty years to be served at sixty percent.

**Ineffective Assistance of Counsel**

It was petitioner's burden in the post-conviction proceedings to prove by clear and convincing evidence the allegations of ineffective assistance of counsel. Tenn. Code Ann. § 40-30-210(f) (1997). The post-conviction court found that Petitioner failed to establish that he received ineffective assistance of counsel. Furthermore, the post-conviction court found that all three of the attorneys involved in Petitioner's representation were "well within the range of competence demanded of criminal defense attorneys." The court noted:

> "[A]lthough the Court was unable to find any Tennessee cases directly on point, other jurisdictions have held that a conspiracy to violate a criminal law does not violate state and federal ex post facto clauses when the conspiracy continues without cessation beyond the effective date of the new law, even though the conspiracy commenced prior to the effective date of the statute prohibiting the conspiracy."

A trial court's findings of fact are reviewed *de novo* with a presumption that those findings are correct unless the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). A trial court's conclusions of law, however, are reviewed under a purely *de novo* standard. *Fields v. State*, 40 S.W.3d at 458. A claim of ineffective assistance of counsel presents issues that are mixed questions of law and fact and is subject to a *de novo* standard of review. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

We review a claim of ineffective assistance of counsel under the standards set forth in *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975), and *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d, 674 (1984). Counsel is effective if the advice given or the services rendered are "within the range of competence demanded in criminal cases." *Baxter*, 523 S.W.2d at 936. The burden of proof is on the Petitioner to establish that counsel's performance was deficient and the deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693; *Dean v. State*, 59 S.W.3d 663, 667 (Tenn. 2001).

Petitioner bears the burden of proving both a deficiency in counsel's performance as well as prejudice, and a failure to prove either prong provides a sufficient basis for denying relief. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To prove a deficiency, a petitioner must show that counsel's acts or omissions were so serious as to fall below an objective standard of "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694. To prove prejudice, petitioner must establish a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698.

To satisfy the first prong of *Strickland*, Petitioner must show that it was indeed error for trial counsel to set out in the plea petition the sentencing range for a Class A felony, rather than a Class B felony. If Petitioner can so establish, the burden remains on him to show that but for counsel's error, he would not have pled guilty and would have proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L.Ed.2d 203, 210 (1985).

### *Ex Post Facto* **Analysis**

We agree with the post-conviction court and conclude that it was not error for trial counsel to set out the sentencing range for a Class A felony in Petitioner's guilty plea petition. While the issue appears to be one of first impression in Tennessee, other jurisdictions, state and federal, have held that a conviction for conspiracy to violate a criminal law does not violate the constitutional prohibition against *ex post facto* laws where the conspiracy continued beyond the effective date of the amending law. *United States v. Farmer*, 73 F.3d 836, 841 (8th Cir. 1996) ("A conspiracy begun before the effective date of a relevant statute, but continued after that date, may constitutionally be punished under that statute. Conspiracy is a continuing offense."); *United States v. Frazier*, 936 F.2d 262, 267 (6th Cir. 1991) ("a person convicted of conspiracy may be sentenced under an amended statute that increases the sentence if the conspiracy continued after the effective date."); *United States v. Henson*, 848 F.2d 1374, 1386 (6th Cir. 1988) (punishing a crime continued after the effective date of a statute imposing a greater penalty for conspiracy does not violate ex post facto); *South Carolina v. Wilson*, 433 S.E.2d 864, 867 (S.C. 1993) ("A conspiracy which commenced prior to and without cessation continued beyond the effective date of a new statute does not violate the ex post facto prohibition.").

Both the Tennessee Constitution and the Constitution of the United States prohibit *ex post facto* laws. U.S. Const. art. I, §10, cl. 1; Tenn. Const. art. I, §11. Generally, *ex post facto* laws are those that make an act criminal that was not criminal at the time it was committed. *Miller v. State*, 584 S.W.2d 758, 761 (Tenn. 1979). Such laws are also prohibited by statute. Tenn. Code Ann. § 39-11-112 (1997) provides:

> Whenever any penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, any offense, as defined by the statute or act being repealed or amended, committed while such statute or act was in full force and

effect shall be prosecuted under the act or statute in effect at the time of the commission of the offense.

The principle on which the *ex post facto* prohibition is based is that of fairness and the notion that persons have a right to fair warning of the conduct that will give rise to criminal penalties. *Smith v. Campbell*, 995 S.W.2d 116, 119 (Tenn. Ct. App. 1999) (citing *Marks v. United States*, 430 U.S. 188, 191, 97 S. Ct. 990, 992-93, 51 L. Ed. 2d 260, 265 (1977)). Because conspiracy to deliver over 300 pounds of marijuana was a criminal offense when the conspiracy began, *see* Tenn. Code Ann. § 39-17-417 (1997), these principles of fairness are not offended. Also included among the five broad classifications of *ex post facto* laws, however, are those that aggravate a crime or make it greater than when it was committed. *Miller v. State*, 584 S.W.2d at 761.

If application of the amended law would affect a substantial right of Petitioner, the *ex post facto* provisions of the state and federal constitutions are implicated and the law in effect on the date the offense was committed should be applied. *State v. Moss*, 13 S.W.3d 374 (Tenn. Crim. App. 1999). In *State v. Pearson*, 858 S.W.2d 879, 883 (Tenn. 1993), the Tennessee Supreme Court reiterated its holding in *Miller v. State*, 584 S.W.2d 758 (Tenn. 1979), and stated:

> [I]n determining whether an ex post facto violation exists in the context of sentencing, the critical question under both the United States and Tennessee Constitutions is whether the law changes the punishment to the defendant's disadvantage, or inflicts a greater punishment than the law allowed when the offense occurred.

Tenn. Code Ann. § 39-17-417(j)(13)(A) clearly "changes the punishment to the defendant's disadvantage." The dispositive issue in this case, however, is the date on which the offense occurred. Under Tennessee law, criminal conspiracy is defined as "a continuing course of conduct which terminates when the objectives of the conspiracy are completed." Tenn. Code Ann. § 39-12-103(e)(1) (1997). If evidence exists that Petitioner participated in the conspiracy after the effective date of the change in the law, the amended law may be applied to Petitioner's criminal conduct without violating the constitution. *See United States v. Bermea*, 30 F.3d 1539, 1577-78 (5th Cir. 1994).

This conclusion flows from our review of Tennessee appellate courts' application of the *ex post facto* provisions of the Tennessee and United States Constitutions to laws affecting discrete crimes, or those which are completed upon the commission of a single act. The constitution prohibits the application of a law that was not in effect at the time the offense was committed. With regard to crimes for which the occurrence of a single unlawful act constitutes their commission, the determination is clear as to whether the crime was completed prior to the law's existence. In such cases, the offense is committed at an exact point in time, and the application of a law that later came into existence will clearly violate the *ex post facto* clauses.

Unlike those crimes, an offense such as conspiracy is constituted by a continuing course of conduct and its commission may occur, as in the case at bar, prior to and after the change in the law. In such cases, the law in question took effect while the offense was still being committed although it was not yet effective at the beginning of the conspiracy. Here, the law designating the offense in count one as a Class A felony was in existence when the offense was committed, from July 1, 1998 until the end of the conspiracy in December 1999. Therefore, its application does not violate the *ex post facto* prohibition. Petitioner is not entitled to relief on this issue.

Petitioner pled guilty to conspiracy to deliver over 300 pounds of marijuana. "The entry of a valid guilty plea constitutes an admission of all facts alleged. . . ." *State v. Smith*, 996 S.W.2d 845, 847 (Tenn. Crim. App. 1999). By entering his plea of guilt, Petitioner has affirmatively admitted that he committed acts in furtherance of the conspiracy after the effective date of the statute designating the crime as a Class A felony. If Petitioner's plea was voluntarily and knowingly entered, the plea itself provides sufficient basis upon which to conclude that he committed acts in furtherance of the conspiracy beyond the effective date of the statute.

**Voluntariness of Petitioner's Guilty Plea**

Due process requires that guilty pleas be knowing and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712, 23 L.Ed.2d 274, 280 (1969). To satisfy constitutional requirements, there must be an affirmative showing in the record that the plea was knowing and voluntary. *Johnson v. State*, 834 S.W.2d 922, 923-24 (Tenn. 1992). Such a showing must include a defendant's admission in open court that he committed the acts charged in the indictment. *Id*. at 924. Four co-defendants entered guilty pleas in addition to Petitioner. The trial court's inquiry and satisfaction of procedural requirements, however, was not compromised. The trial court carefully asked each defendant, in turn, all of the questions relevant to determining whether his or her plea was voluntary and knowing.

At the guilty plea hearing, the prosecutor summarized the State's evidence as follows. In November of 1997, an officer for the Department of Correction turned over a tape recording of a telephone conversation between Randy Beasley, who was incarcerated, Mr. Beasley's daughter, and Petitioner. The tape recording discussed the distribution of marijuana by Mr. Beasley and supplied by Petitioner. Based on the tape recording, the police conducted an investigation of Petitioner and others. In the course of their investigation, police began surveillance of several of the defendants' residences, including Petitioner's. In December of 1998, police observed co-defendant Sheryl Peach placing a black trash bag into a vehicle outside of Petitioner's residence. Police followed her and stopped her. Inside the vehicle they found ten pounds of marijuana. Police executed search warrants of several of the defendants' residences. In co-defendant Michael Peach's truck, police found over forty-eight pounds of marijuana and drug records for December 1, 1998, which revealed that over 450 pounds of marijuana had been distributed the week prior to the defendants' arrests.

Police executed a search warrant of Petitioner's house, in which they found a receipt from a business called Alabama Spy Shop, operating in Huntsville, Alabama. The receipt reflected the

purchase of several books on how to evade detection by law enforcement. Debbie Peltier, who worked at Alabama Spy Shop, identified Petitioner as having purchased the books the day before police conducted the searches. She told police that Petitioner paid for the items with cash and that Petitioner revealed to her that he worked for an individual who was involved in a large scale distribution of marijuana and he was purchasing those items to protect himself.

Petitioner's guilty plea petition states that his lawyer explained the indictment and the charges against him, the elements of the crimes with which he was charged, and the State's evidence against him in regard to the charges. The plea petition sets forth in detail the rights to which he is constitutionally entitled, the waiver effect that his guilty plea has on those rights, and that he is satisfied with his representation. At the guilty plea hearing, the trial court advised Petitioner and his co-defendants of the right to a jury trial. The trial court also separately asked Petitioner and each of his co-defendants to review their guilty plea petitions with their lawyers in open court and state individually whether they understood the content and effect of the guilty plea petitions. Petitioner answered affirmatively and unequivocally each of the trial court's questions concerning the voluntariness of his plea. After a review of the entire record and the applicable law, we conclude that Petitioner's guilty pleas were knowingly and voluntarily entered.

## CONCLUSION

We conclude that Petitioner's trial counsel correctly set out the class of felony and the range of punishment in the guilty plea petition. Because the conspiracy to which Petitioner pled guilty continued beyond the effective date of the statute designating the offense as a Class A felony, Petitioner could properly be convicted of Class A felony. Petitioner did not receive an illegal sentence. Petitioner is not entitled to relief based on his claim of ineffective assistance of counsel. Petitioner's guilty plea was voluntarily and knowingly entered. Furthermore, his plea acts as an affirmative admission to the facts alleged in the indictment, thus supporting the conclusion that the conspiracy in count one occurred after the effective date of the July 1, 1998 amendment. The judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE

-8-