IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 9, 2009 Session

**STATE OF TENNESSEE  v. WILLIAM CHARLES HOWSE**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2006-A-450      Cheryl Blackburn, Judge**

**No. M2008-01827-CCA-R3-CD - Filed May 19, 2010**

Following a bench trial, Defendant, William C. Howse, was convicted of violating the Sexual Offender Registration, Verification, and Tracking Act of 2004 (the "2004 Act"), a Class E felony.  The trial court sentenced Defendant as a Range I, standard offender, to one year to be served as ninety days in confinement and the remainder on probation.  On appeal, Defendant argues that (1) the trial court erred in finding that he knowingly violated the provisions of the 2004 Act, and (2) the 2004 Act violates his right to equal protection under the Fourteenth Amendment to the United States Constitution.  After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

Gary D. Copas, Nashville, Tennessee, for the appellant, William Charles Howse.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; and Rob McGuire, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I.  Background**

According to the judgment of conviction entered as an exhibit without objection at the bench trial, Defendant was convicted of rape, a Class B felony, in the Davidson County Criminal Court on April 22, 1993. Defendant was sentenced as a Range I, standard offender, to eight years.  The trial court ordered Defendant to serve one year in the county workhouse,

after which his sentence was suspended and Defendant placed in a community corrections program. As a result of his rape conviction, Defendant was required to register as a sexual offender with the Tennessee Bureau of Investigation ("TBI") under the Sexual Offender Registration and Monitoring Act (the "1994 Act"). T.C.A. §§ 40-39-102, -103 (repealed).

At the bench trial, Avis Stone testified that she was the custodian of the sexual offender registry records for the TBI. According to the TBI's records, Defendant signed a Sexual Offender Release Notification on December 29, 1994, containing his acknowledgment that the sexual offender registration requirements had been explained to him, and his agreement to submit a sexual offender registration form to the TBI within ten days of his release from incarceration. On March 1, 1995, Defendant received notice from the TBI that he had not complied with the sexual offender registration requirements, and Defendant submitted a completed sexual offender registration form on March 16, 1995.

Ms. Stone stated that under the 1994 Act, registration forms were sent by certified mail on a quarterly basis to the sexual offenders at the addresses listed on the registry. T.C.A. § 40-39-104 (1994) (repealed). The recipients were required to return the forms to the TBI within ten days of the receipt of the form. *Id*. Ms. Stone stated that Defendant began receiving sexual offender registration forms on a quarterly basis commencing in June 1995, but he failed to return the forms for June, September, and December 1995 and March 1996. In November 1995, however, Defendant reported a change of address which was noted in his file on November 8, 1995.

Defendant again began sending in the required forms on May 1, 1996, and fully complied with the sexual offender registry requirements from June 1996 until December 1999. In April 2000, Defendant submitted his registration form nine days late. In July 2000, Defendant signed the certified mail receipt but failed to return a registration form. In September and December 2000, and in March 2001, the certified mail containing Defendant's quarterly registration forms were marked "return to sender." After the third certified letter was returned to the TBI, Defendant's file was marked as "noncompliant."

Ms. Stone said that Defendant did not have any contact with the TBI from September 2000 until Defendant re-registered with the sexual offender registry under a new address following his indictment for the charged offense in February 2006.

On cross-examination, Ms. Stone stated that the TBI sent a notice explaining the new reporting requirements contained in the 2004 Act to all sexual offenders on the registry by certified mail to the address noted in the sexual offender's file. Ms. Stone said that Defendant's notice was returned as undeliverable. Ms. Stone stated, however, that information concerning the new reporting requirements was also disseminated to the public

through television, radio, and fliers. Ms. Stone acknowledged that Defendant signed a form explaining the new reporting requirements under the 2004 Act when he re-registered, and Defendant had been in compliance with the reporting requirements since that time.

At the conclusion of the bench trial, the trial court, as trier of fact, found that the evidence showed beyond a reasonable doubt that Defendant had knowingly violated the registration provisions of the 2004 Act.

## II. Sufficiency of the Evidence

Defendant argues that the State failed to prove that he knowingly violated the provisions of the 2004 Act. Specifically, Defendant submits that there was no proof that he had actual knowledge of the new reporting requirements under the 2004 Act until he again registered in March 2006 after his indictment on the current charge.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Once a defendant is found guilty, his or her presumption of innocence is removed and replaced on appeal with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id*.; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The trier of fact is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Defendant was indicted for violating the provisions of Tennessee Code Annotated sections 40-39-203 and -204 "on or about the 1st day of October, 2004." Effective August 1, 2004, the 1994 Act was repealed and replaced by the 2004 Act. T.C.A. § 40-39-201, Compiler's Notes. Failure to comply with the sexual offender registration requirements is a continuing offense. T.C.A. § 40-30-208(f); *State v. Flatt*, 272 S.W.3d 615, 620-21 (Tenn. Crim. App. 2006). Because his noncompliance with the sexual offender registration requirements was ongoing when the 2004 Act was enacted, Defendant is subject to

punishment under the new act. *See Agee v. State,* 111 S.W.3d 571, 576-77 (Tenn. Crim. App. 2003) (continuing offenses, such as conspiracy, which continue beyond the effective date of an amending law may be punished under the amended law); *State v. Louie E. Whitecotton*, No. E2007-00335-CCA-R3-CD, 2008 WL 1813103, at *6 n.1 (Tenn. Crim. App., at Knoxville, Apr. 23, 2008), *no perm. to appeal filed* (concluding that because failure to register as a sexual offender is a continuing offender, a defendant is subject to punishment under the amendments to the 2004 Act).

As relevant here, the 2004 Act continues to require sexual offenders to report on a quarterly basis, but changes the manner of reporting from submitting registration forms by mail to reporting to the appropriate law enforcement official in person. T.C.A. § 40-39-204(b). The 2004 Act also requires registrants to report in person, rather than by mail, any change in his or her primary or secondary residence within forty-eight hours of such change. *Id*. 40-39-203(a)(1). Tennessee Code Annotated section 40-30-208 provides that "[i]t is an offense to knowingly violate any provision [of the 2004 Act]," including, but not limited to, the "[f]ailure of an offender to timely register or report" and "[f]ailure to timely disclose required information to the designated law enforcement agency." *Id*. § 40-39-208(a)(1) and (2).

A person "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." *Id*. § 39-11-302(b). The one element present in almost all criminal offenses which is most often proven by circumstantial evidence is the culpable mental state. *See State v. Hall*, 490 S.W.2d 495, 496 (Tenn. 1973). "Other than an accused stating his or her purpose, intent, or thinking at the relevant times, the trier of fact is left to determine the mental state by making inferences drawn from the surrounding circumstances found by it to exist." *State v. Calvin Renard Steel*, No. W2006-02032-CCA-R3-CD, 2007 WL 2872380, at *7 (Tenn. Crim. App., at Jackson, Oct.2, 2007), *no perm. to appeal filed* (citation omitted).

Nonetheless, Defendant argues that the provisions of the 2004 Act indicate that the legislature only intended to criminally prosecute sexual offenders who had previously registered under the 1994 Act after they received actual notice of the changes in reporting requirements contained in the 2004 Act. That is, a sexual offender subject to the registration requirements of the 1994 Act, like Defendant, who failed to receive the TBI's explanation of the provisions of the 2004 Act because he or she had not provided a current address to the registry as required by law, would not be subject to criminal prosecution for such noncompliance. Instead, under Defendant's argument, these sexual offenders could only be prosecuted for noncompliance after they again resumed reporting, whether voluntarily or involuntarily, under the 2004 Act. In support of his argument, Defendant points to section 40-30-203(l) of the Act which provides that "[t]he offender's signature on the TBI

-4-

registration form creates the presumption that the offender has knowledge of the registration, verification, and tracking requirements of this part."

As this Court recently instructed in *State v. Siliski*, 238 S.W.3d 338 (Tenn. Crim. App. 2007):

> A court's role in construing a statute is to ascertain and give effect to legislative intent. *State v. Goodman*, 90 S.W.3d 557, 563-64 (Tenn. 2002); *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn.2000). Whenever possible, legislative intent is to be ascertained from the natural and ordinary meaning of the language used. *Flemming*, 19 S.W.3d at 197; *Carson Creek Vacation Resorts, Inc. v. State, Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993). "The legislative intent and purpose are to be ascertained primarily from the natural and ordinary meaning of statutory language, without a forced or subtle interpretation that would limit or extend the statute's application." *State v. Blackstock*, 19 S.W.3d 200, 210 (Tenn. 2000) (citing *State v. Pettus*, 986 S.W.2d 540, 544 (Tenn.1999)). If the language of a statute is not ambiguous, we may apply the plain language of the statute to resolve the issue. *Goodman*, 90 S.W.3d at 563-64; *Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn. 2000).

*Id*. at 362.

The stated purpose of the 2004 Act is as follows:

(1) Repeat sexual offenders, sexual offenders who use physical violence, and sexual offenders who prey on children are violent sexual offenders who present an extreme threat to the public safety. Sexual offenders pose a high risk of engaging in further offenses after release from incarceration or commitment, and protection of the public from these offenders is of paramount public interest;

(2) It is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses collected pursuant to this part, to allow members of the public to adequately protect themselves and their children from these persons;

(3) Persons convicted of these sexual offenses have a reduced expectation of privacy because of the public's interest in public safety;

(4) In balancing the sexual offender's and violent sexual offender's due process and other rights against the interests of public security, the general assembly finds that releasing information about offenders under the circumstances specified in this part will further the primary governmental interest of protecting vulnerable populations from potential harm;

(5) The registration of offenders, utilizing complete and accurate information, along with the public release of specified information concerning offenders, will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems that deal with these offenders;

(6) To protect the safety and general welfare of the people of this state, it is necessary to provide for continued registration of offenders and for the public release of specified information regarding offenders. This policy of authorizing the release of necessary and relevant information about offenders to members of the general public is a means of assuring public protection and shall not be construed as punitive[.]

T.C.A. § 40-39-201(b).

The 2004 Act provides that a sexual offender's "signature on the TBI registration form creates the presumption that the offender has knowledge of the registration, verification and tracking requirements" of the 2004 Act. T.C.A. § 40-39-203(l). A permissive inference or presumption, however, is merely an evidentiary device "which allows – but does not require – the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one." *State v. Pickett*, 211 S.W.3d 696, 703 (Tenn. 2007). A permissive inference does not relieve the State of its burden of proving the elements of the crime, including the requisite mental state, and the inference simply provides one way in which the trier of fact may conclude that the accused acted knowingly. *Id*. The 2004 Act specifically includes within the definition of a sexual offender those offenders, like Defendant, who were convicted of a sexual offense prior to January 1, 1995, and were "discharged from probation, parole, or any other alternative to incarceration on or after January 1, 1995." T.C.A. § 40-39-202(15)(B)(ii). Based on the plain language of the statute, we conclude that the creation of the inference or presumption in section 40-39-203(l) does not evidence a legislative intent to prohibit prosecution of sexual offenders who registered under the 1995 Act until they re-registered under the 2004 Act.

Moreover, Defendant's argument would completely undermine the purpose of the sexual offender registration requirements. It would instead encourage noncompliance by providing "an open door" to escape from criminal prosecution in the event that the law is

amended in any part during the period of the sexual offender's period of noncompliance. *See Hayes*, 899 S.W.2d at 182 (quoting *McGuire v. State*, 26 Tenn. 54, 55 (1846)) (observing that if ignorance of the law served to excuse criminal behavior, "'no community could be held together in peace and security; for evil-doers would have an open door for their escape'").

We observe that in the context of registration laws that impose penalties for noncompliance such as the various state sexual offender registration laws, a balance must be achieved between the due process requirement of notice and the general rule that ignorance of the law is no defense. *Lambert v. California*, 355 U.S. 225, 228, 78 S. Ct. 240, 242 (1957). In *Lambert*, the United States Supreme Court cautioned that "where a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case . . . actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance [at issue] can stand." *Id*. at 229, 78 S. Ct. at 242.

In conformity with due process principles, Defendant received actual knowledge of his continuing legal duty to register as a sexual offender in 1995 as evidenced by his execution of a Sexual Offender Release Notification form on December 29, 1994. *See* T.C.A. § 40-39-105(b)(1), (c) (repealed). Moreover, by his compliance with the registration requirements for a number of years, including periodically updating his address, Defendant demonstrated that he knew and understood his responsibilities. Defendant was thus advised of the consequences of his failure to comply with the sexual offender registration requirements but nonetheless chose not to comply. Accordingly, this is not a case "where due process prohibits sanctioning a person who unwittingly breaks a law by passive conduct which an ordinary person would not even suspect to be, at least, potentially criminal." *State v. Hayes*, 899 S.W.2d 175, 183 n.3 (Tenn. Crim. App. 1995) (citing *Lambert*, 355 U.S. at 228, 78 S. Ct. at 242).

Defendant's argument is essentially a plea of ignorance of the law. However, "[t]he general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." *Cheek v. United States*, 498 U.S. 192, 199, 111 S. Ct. 604, 609 (1991); *State v. Anderson*, 894 S.W.2d 320, 322 (Tenn. Crim. App. 1994). After a thorough review, we conclude that the trial court, as trier of fact, could conclude beyond a reasonable doubt that Defendant knew of his continuing responsibility to register and report as a sexual offender and to update his personal information, and that he knowingly failed to do so. Defendant is not entitled to relief on this issue.

## III. Equal Protection

On appeal, Defendant argues that his equal protection rights were violated because the 2004 Act created two separate classes of sexual offenders which received disparate treatment. Defendant submits that the first class includes those sexual offenders who were incarcerated or on probation or parole when the 2004 Act was enacted and thus were provided with actual notice of the 2004 changes to the sexual offender registration law. Defendant defines the second class as individuals like him who were not on probation or parole and thus received no "fair warning" of their new responsibilities under the 2004 Act.

Prior to trial, Defendant filed a motion to dismiss the charges against him alleging that his right to equal protection under the law had been violated. A hearing was apparently conducted on Defendant's motion on April 4, 2007, but the transcript is not included in the record. The trial court denied Defendant's motion on April 18, 2007. The State argues that Defendant has waived appellate review of this issue by failing to provide an adequate record. *See* Tenn. R. App. P. 24(a); *State v. Ralph LePore*, No. E2007-00893-CCA-R3-CD, 2008 WL 4613667 (Tenn. Crim. App., at Knoxville, Oct. 13, 2008), *no perm. to appeal filed*. Alternatively, the State argues that Defendant has failed to establish an equal protection violation.

As the State points out, it is Defendant's duty to prepare a fair, accurate, and complete record on appeal to enable meaningful appellate review. Tenn. R. App. P. 24(a). An incomplete record that does not contain a transcript of the proceedings that are relevant to an issue presented for review precludes this Court from considering an issue. *State v. Matthews*, 805 S.W.2d 776, 784 (Tenn. Crim. App. 1990). Nonetheless, we will briefly address the merits of Defendant's issue.

"The Equal Protection Clause provides that 'all persons similarly situated should be treated alike.'" *Cutshall v. Sundquist*, 193 F.3d 466, 482 (6th Cir. 1999) (quoting *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S. Ct. 3249 (1985)). In order to prevail on an equal protection challenge, the defendant must prove some purposeful discrimination on the part of the State, and that this purposeful discrimination had a discriminatory effect on him or her. *State v. Banks*, 271 S.W.3d 90, 155 (Tenn. 2008) (quoting *McCleskey v. Kemp*, 481 U.S. [279,] 292, 107 S. Ct. 1756[, 1767 (1987); *State v. Irick*, 762 S.W.2d 121, 129 (Tenn. 1988)). We observe initially that sexual offenders are not a suspect class for equal protection purposes, and the 2004 Act is therefore subject to scrutiny under the rational basis test. *Cutshall*, 193 F.3d at 482.

Ms. Stone testified at the bench trial that all sexual offender registrants, including those who had completed serving their sentences like Defendant, were sent a notice of the changes in the registration requirements contained in the 2004 Act by certified mail to the address listed on the registry. Therefore, Defendant's "classes" are more appropriately

defined as sexual offenders who provided a correct address to the TBI as required by law and those who did not. Defendant's failure to receive the certified mail containing an explanation of the new registration requirements was caused by his own conduct, not the State's. Therefore, Defendant has failed to establish an equal protection claim and is not entitled to relief on this issue. *See State ex rel. Johnson v. Heer*, 219 Tenn. 604, 412 S.W.2d 218, 219 (Tenn. 1966) ("[I]n order for the defendant's rights under the Fourteenth Amendment to come into play, there must be some action on the part of the State that deprives him of due process of law and/or equal protection of the law.").

## CONCLUSION

After a thorough review, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE