COOK, J., delivered the opinion of the court, in which LUDINGTON, D.J., joined. MOORE, J. (pp. 754-80), delivered a separate dissenting opinion.
OPINION
COOK, Circuit Judge.
Plaintiffs Terrence Johnson, Jim Harris, and Joshua Roberts[1] — all Tennessee residents and convicted felons — filed a complaint alleging that, by conditioning restoration of their voting rights on payment of court-ordered victim restitution and child support obligations, Tennessee’s voter re-enfranchisement statute violates the Equal Protection Clause of the United States Constitution, the Twenty-Fourth Amendment, and the Ex Post Facto and Privi *745 leges or Immunities Clauses of the United States and Tennessee Constitutions. In a well-reasoned decision, the district court granted Defendants’ motion for judgment on the pleadings, and Plaintiffs appealed. Finding no error, we affirm.
I.
All three plaintiffs reside in various Tennessee counties: Johnson in Shelby County, Harris in Madison County, and Roberts in Davidson County. A jury convicted Johnson of wire fraud in 1999, and the court sentenced him to a term of imprisonment and ordered him to pay $40,000 in restitution. He completed his prison term, but remains unable to satisfy the restitution order. In addition, he owes a significant amount (more than $1,000) in overdue child support payments. Similarly, multiple felony convictions yielded prison sentences for Harris and Roberts, both of whom owed past-due child support obligations ($2,500 and $7,000, respectively) at the time they filed the complaint. Like Johnson, Harris and Roberts served their prison terms and are no longer on probation. Harris has since paid his overdue child support, and thus faces no impediment to applying for re-enfranchisement. He continues, however, to press a claim for nominal damages on account of any past constitutional harm.
The State of Tennessee, like many others, disenfranchises convicted felons, but provides them with a statutory procedure for regaining the franchise upon completion of their sentences and satisfaction of certain conditions. The re-enfranchisement statute at issue, Tennessee Code § 40-29-202, restores felons’ eligibility “to apply for a voter registration card and have the right of suffrage restored” upon receipt of a pardon, discharge from custody after serving the maximum sentence imposed, or final discharge by the relevant county, state, or federal authority. The statute, however, carves out two exceptions to re-enfranchisement eligibility. It provides that:
(b) ... a person shall not be eligible to apply for a voter registration card and have the right of suffrage restored, unless the person has paid all restitution to the victim or victims of the offense ordered by the court as part of the sentence!, and]
(c) ... a person shall not be eligible to apply for a voter registration card and have the right of suffrage restored, unless the person is current in all child support obligations.
Tenn.Code Ann. § 40-29-202(b)-(c). The Tennessee legislature added these two conditions in 2006; before that, felons could apply for re-enfranchisement notwithstanding any outstanding restitution or child support obligations.
Having completed their prison and probation terms, Plaintiffs claim that they desire to vote in upcoming elections but remain ineligible to do so because of their unpaid restitution and child support obligations. They sued Defendants in the Middle District of Tennessee, challenging the constitutionality of the re-enfranchisement statute’s restitution and child support provisions. Defendants sought judgment on the pleadings under Federal Rule of Civil Procedure 12(c), which the district court granted, finding that Plaintiffs’ constitutional challenges lacked merit. Plaintiffs timely appealed.[2]
*746 II.
On appeal, Plaintiffs claim that the district court erred in rejecting their challenges under the United States and Tennessee Constitutions. We review the district court’s grant of a Rule 12(c) motion for judgment on the pleadings using the same de novo standard applicable to a motion to dismiss under Rule 12(b)(6). Roger Miller Music, Inc. v. Sony/ATV Publ’g, LLC, 477 F.3d 383, 389 (6th Cir.2007). “For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.” Tucker v. Middleburg-Legacy Place, LLC, 539 F.3d 545, 549 (6th Cir.2008) (quoting JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir.2007)).
A. Equal Protection
The Fourteenth Amendment provides that no state shall “deny to any person within its jurisdiction the equal protection of the laws.” U.S. Const, amend. XIV, § 1. The Equal Protection Clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis. Radvansky v. City of Olmsted Falls, 395 F.3d 291, 312 (6th Cir.2005). Plaintiffs argue that the district court erred by testing their equal protection challenge using the rational basis test, rather than strict scrutiny, because the re-enfranchisement statute: (1) burdens their fundamental right to vote; and (2) improperly discriminates against the indigent.
Plaintiffs’ arguments miss the mark. The state may, within the bounds of the Constitution, strip convicted felons of their voting rights. Richardson v. Ramirez, 418 U.S. 24, 54, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974). Having lost their voting rights, Plaintiffs lack any fundamental interest to assert. See Wesley v. Collins, 791 F.2d 1255, 1261 (6th Cir.1986) (“It is undisputed that a state may constitutionally disenfranchise convicted felons, and that the right of felons to vote is not fundamental.” (citations omitted)). And contrary to Plaintiffs’ other contention, wealth-based classifications do not discriminate against a suspect class. See Papasan v. Allain, 478 U.S. 265, 283-84, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); Maher v. Roe, 432 U.S. 464, 470-71, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977). Accordingly, because Tennessee’s re-enfranchisement law neither implicates a fundamental right nor targets a suspect class, the district court properly applied rational basis review, not strict scrutiny, to Plaintiffs’ equal protection challenge. See San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 29, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).
To survive rational basis scrutiny, the statute need only be “rationally related to legitimate government interests,” Doe v. Mich. Dep’t of State Police, 490 F.3d 491, 501 (6th Cir.2007) (internal quotation marks and citation omitted), and “must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification,” FCC v. Beach Commc’ns, Inc., 508 U.S. 307, *747 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). “[E]very reasonable construction must be resorted to, in order to save a statute from unconstitutionality.” Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988) (quoting Hooper v. California, 155 U.S. 648, 657, 15 S.Ct. 207, 39 L.Ed. 297 (1895)). Where rational basis review governs, we will not strike down a statute on equal protection grounds “unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature’s actions were irrational.” Vance v. Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). “A ‘plaintiff may demonstrate that the government action lacks a rational basis ... either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will.’ ” Club Italia Soccer & Sports Org. v. Chatter Twp. of Shelby, Mich., 470 F.3d 286, 298 (6th Cir.2006) (alteration in original) (quoting Warren v. City of Athens, 411 F.3d 697, 711 (6th Cir.2005)).
Defendants assert that the restitution and child-support-payment provisions in the re-enfranchisement statute advance legitimate interests of the state: protecting the ballot box from convicted felons who continue to break the law by failing to comply with court orders, encouraging payment of child support, and requiring felons to complete their entire sentences, including paying victim restitution. We find that the state’s interests of encouraging payment of child support and compliance with court orders, and requiring felons to complete their entire sentences, including paying victim restitution, supply a rational basis for the challenged statutory provisions sufficient to pass constitutional muster. Certainly, Tennessee possesses valid interests in promoting payment of child support, requiring criminals to fulfill their sentences, and encouraging compliance with court orders. See Jones v. Helms, 452 U.S. 412, 423, 101 S.Ct. 2434, 69 L.Ed.2d 118 (1981) (“There can be no question about the legitimacy of the purpose to cause parents to support their children.”); Carter v. Lynch, 429 F.2d 154, 157-58 (4th Cir.1970) (upholding state civil arrest and release statutes as legitimate legislative functions “well within the State’s power to secure enforcement of the judgments of its courts”); Blackhawk Mining Co. v. Andrus, 711 F.2d 753, 757-58 (6th Cir.1983) (upholding statute requiring prepayment of proposed penalty assessments against due process challenge where government had legitimate interest in preventing collection problems and ensuring compliance with the law). The challenged provisions in the re-enfranchisement law bear, at a minimum, a direct and rational relationship to the advancement of those interests, and therefore withstand rational basis scrutiny.
Although Plaintiffs, who urge the court to apply strict scrutiny, fail to satisfy their burden of negating any conceivable rational basis for the restitution and child support provisions, Michael v. Ghee, 498 F.3d 372, 379 (6th Cir.2007), the dissent formulates new rational basis arguments in an attempt to carry this burden for them. The dissent’s efforts similarly fail.
The dissent agrees that rational basis review governs, but insists that § 40-29-202(b)-(c) cannot survive constitutional scrutiny even under this highly deferential standard. The dissent argues that “preconditioning suffrage on a payment that a person is unable to make is [not] in any rational way related to the government’s *748 interest in promoting that payment.” Dissent at 756. But the statute is not aimed at encouraging the collection of payments from indigent felons, but from all felons. The legislature may have been concerned, for instance, that a specific exemption for indigent felons would provide an incentive to conceal assets and would result in the state being unable to compel payments from some non-indigent felons. That the state used a shotgun instead of a rifle to accomplish its legitimate end is of no moment under rational basis review. See E. Brooks Books, Inc. v. Shelby County, Tenn., 588 F.3d 360, 364 (6th Cir.2009) (“[A] law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous.” (alternation in original) (quoting Romer v. Evans, 517 U.S. 620, 632, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996))). While the dissent would prefer that the state not discriminate on the basis of wealth when providing statutory benefits, this is an argument that must be resolved by the legislature, not this Court.
Resisting this traditional rational basis analysis, the dissent cites Zablocki v. Redhail, 434 U.S. 374, 389, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), and Bearden v. Georgia, 461 U.S. 660, 662, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), two cases where “the Supreme Court ... rejected a similar ‘collection device rationale.’ ” Dissent at 756. Both cases are distinguishable.
In Zablocki, which concerned the fundamental right to marry, the Court applied strict scrutiny to strike down a state statute conditioning the ability to marry on the payment of child support obligations. Although Zablocki found the state’s asserted interest in encouraging child support payments legitimate, it found that the statute was not “closely tailored to effectuate only [that] interest[],” Zablocki, 434 U.S. at 388, 98 S.Ct. 673, in light of the existence of “numerous other means for exacting compliance with ... obligations,” id. at 389, 98 S.Ct. 673. The dissent rightly notes that here, like Zablocki, other means (indeed, perhaps better means) exist for collecting restitution and child support payments. But whereas strict scrutiny guided the Court’s analysis in Zablocki, rational basis guides our review. Ultimately, this standard proves determinative because “[t]he fact that other means are better suited to the achievement of governmental ends ... is of no moment under rational basis review.” Tuan Anh Nguyen v. INS, 533 U.S. 53, 77, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001).
Like Zablocki, Bearden v. Georgia also proves inapposite due to its heightened standard of review. In Bearden, the Court held that Georgia could not revoke an individual’s probation for failure to pay a fine or restitution absent evidence and findings that he was somehow responsible for the failure. The revocation of probation at issue in Bearden implicated physical liberty and effectively “turned a fine into a prison sentence.” Bearden, 461 U.S. at 674, 103 S.Ct. 2064. Although the parties “debate[d] vigorously whether strict scrutiny or rational basis [was] the appropriate standard of review,” id. at 665, 103 S.Ct. 2064, the Court maintained that in that instance the issue could not be resolved by “pigeonhole analysis,” but rather required “a careful inquiry into such factors as the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose,” id. at 666-67, 103 S.Ct. 2064 (alteration in original) (quotation marks and citation omitted). Tennessee’s re-enfranchisement conditions, by contrast, merely relate to the *749 restoration of a civil right to which Plaintiffs have no legal claim, and invoke only rational basis review. See Madison v. Washington, 161 Wash.2d 85, 163 P.3d 757, 770 (2007) (distinguishing Bearden and upholding, under rational basis review, a statute conditioning re-enfranchisement on completion of all terms of felons’ sentences, including full payment of their financial legal obligations). With its differing standard of review, Bearden bears little on our analysis here.
Likewise inapposite are Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), and James v. Strange, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972), three cases from the 1950s and 1970s that the dissent finds instructive regarding “the propriety of wealth-based distinctions.” Dissent at 759-60. Each of these cases concerned fundamental interests subject to heightened scrutiny. Though the Griffin Court declined to specify its review standard, its analysis focused on the importance of the right of access to the courts. See Griffin, 351 U.S. at 19, 76 S.Ct. 585 (“Thus to deny adequate review to the poor means that many of them may lose their life, liberty or property because of unjust convictions which appellate courts would set aside.”); Robinson v. Bd. of Regents, 475 F.2d 707, 710 (6th Cir.1973) (explaining how the existence of a fundamental right “triggered the application of [strict scrutiny]” in Griffin). And while the Williams Court similarly failed to articulate a precise standard of review, the fact that the case involved the denial of an indigent defendant’s physical liberty appeared dispositive. See Williams, 399 U.S. at 262-63, 90 S.Ct. 2018 (Harlan, J., concurring) (“[T]he presumption of regularity that comes with legislative judgment is one that is not equally acceptable in all instances, nor is it blind to the nature of the interest affected____[T]his Court will squint hard at any legislation that, deprives an individual of his liberty — his right to remain free.”). Indeed, Williams held only that “a State may not constitutionally imprison beyond the maximum duration fixed by statute a defendant who is financially unable to pay a fine,” without even reaching “the question whether a State is precluded in any other circumstances from holding an indigent accountable for a fine by use of a penal sanction.” Williams, 399 U.S. at 243-44, 90 S.Ct. 2018. And though Strange’s text appeared to apply rational basis review, the Court, concerned about discriminatory garnishment of the wages with which a debtor “supports himself and his family,” found that the admittedly “legitimate” interests of the state paled in comparison to “the hopes of indigents for self-sufficiency and self-respect.” Strange, 407 U.S. at 135, 141-42, 92 S.Ct. 2027; see also Olson v. James, 603 F.2d 150, 154 (10th Cir.1979) (“[I]t was the failure of the statute to protect the wages and the intimate personal property of the defendant from seizure and its consequent discouraging of independence and self-sufficiency ... that brought the Court to the conclusion that the provisions constituted a violation of the equal protection clause.”). Plaintiffs here assert no comparable interest triggering a heightened standard of review, but, instead, the mere “statutory benefit” of re-enfranchisement. Harvey v. Brewer, 605 F.3d 1067, 1079 (9th Cir.2010).
Over the years, the Court has propounded inconsistent iterations of the rational basis standard. In United States Railroad Retirement Board v. Fritz, the Court acknowledged its usage of different rational basis formulations, referencing a collection of cases — including Strange — and noting that even “[t]he most arrogant legal scholar would not claim that all of these cases applied a uniform or consistent test *750 under equal protection principles.” 449 U.S. 166, 177 n. 10, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980). We believe that our application of the test aligns with this Circuit’s and the Supreme Court’s most recent pronouncements on the rationality standard, namely, that a “law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous.” E. Brooks Books, Inc. v. Shelby County, 588 F.3d 360, 364 (6th Cir.2009) (quoting Romer v. Evans, 517 U.S. 620, 632, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996)).[3] Our application also aligns with various courts’ applications of rational basis review to laws premising the restoration of the right to vote upon felons’ completion of certain conditions. See, e.g., Harvey, 605 F.3d 1067; Hayden v. Paterson, 594 F.3d 150 (2d Cir.2010); Owens v. Barnes, 711 F.2d 25 (3d Cir.1983); Madison, 163 P.3d 757. For example, in Hayden v. Paterson, the Second Circuit, though recognizing that “there remains some oddity in the laws in that those who have finished their prison terms, but are still on parole, are denied the right to vote while those with suspended sentences are not,” denied the plaintiffs’ equal protection challenge because “rational basis review allows legislatures to act incrementally and to pass laws that are over (and under) inclusive without violating the Fourteenth Amendment.” 594 F.3d at 171.
Finally, the dissent advances an “additional reason” why it finds § 40-29-202(c) “constitutionally suspect,” Dissent at 762-63, namely, that the child-support-payment condition fails to relate directly to the state’s reason for stripping individuals of the franchise in the first place — i.e., the underlying felony conviction. The dissent culls this direct-relationship constitutional requirement from Richardson v. Ramirez and Hunter v. Underwood, 471 U.S. 222, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985). But Richardson and Hunter instruct that the state’s authority to disenfranchise derives from an individual’s commission of a qualifying crime and do not, as the dissent suggests, speak to franchise return. Richardson, 418 U.S. at 54, 94 S.Ct. 2655; Hunter, 471 U.S. at 233, 105 S.Ct. 1916. Rather, well-settled equal protection principles provide that the statutory re-enfranchisement conditions need only further a legitimate government interest — not a legitimate government interest specifically tied to the state’s authority for the initial disenfranchisement. Vance, 440 U.S. at 97, 99 S.Ct. 939 (finding that legislature’s actions must qualify as irrational to fail rational basis review).
B. Twenty-Fourth Amendment
The Twenty-Fourth Amendment proscribes any denial or abridgement of the right to vote for “failure to pay any poll tax or other tax.” U.S. Const, amend. XXIY. Passed in 1962 and ratified two years later, the Twenty-Fourth Amendment exists to combat the “disenfranchisement of the poor.... ” Harman v. Forssenius, 380 U.S. 528, 539, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). Plaintiffs claim that the restitution and child-support-payment provisions amount to unlawful poll taxes *751 because they condition the restoration of voting rights on monetary payments Plaintiffs are unable to make. This argument fails for several reasons.
First, and most fundamentally, the re-enfranchisement law at issue does not deny or abridge any rights; it only restores them. As convicted felons constitutionally stripped of their voting rights by virtue of their convictions, Plaintiffs possess no right to vote and, consequently, have no cognizable Twenty-Fourth Amendment claim. Harvey, 605 F.3d at 1080. The challenged provisions do not disenfranchise them or anyone else, poor or otherwise; Tennessee’s indisputably constitutional disenfranchisement statute accomplished that. See Richardson, 418 U.S. at 54, 94 S.Ct. 2655. The re-enfranchisement law does not condition the right to vote on payment of restitution or child support, but instead conditions the restoration of a felon’s right to vote on such payment — a state regulatory arrangement the Twenty-Fourth Amendment says nothing about. See Harvey, 605 F.3d at 1080 (affirming dismissal of claim by disenfranchised felons that Arizona’s disenfranchisement scheme violated the Twenty-Fourth Amendment by requiring the payment of any fíne or restitution before restoration of voting rights); Howard v. Gilmore, No. 99-2285, 205 F.3d 1333, 2000 WL 203984, at *2 (4th Cir. Feb.23, 2000) (per curiam) (affirming dismissal of claim by disenfranchised felon that $10 fee for initiating restoration of civil rights, including voting, constituted an unconstitutional poll tax in violation of the Twenty-Fourth Amendment because “it is not his right to vote upon which payment of a fee is being conditioned; rather, it is the restoration of his civil rights upon which the payment of a fee is being conditioned”).
Second, even if the Twenty-Fourth Amendment applied to Tennessee’s re-enfranchisement law, the provisions requiring payment of restitution and child support do not represent taxes on voting imposed by the state, and therefore do not violate the Amendment’s terms. See Coronado v. Napolitano, No. CV-07-1089-PHX-SMM, 2008 WL 191987, at *5 (D.Ariz. Jan.22, 2008) (rejecting Twenty-Fourth Amendment challenge to restitution payment requirement). Unlike poll taxes, restitution and child support represent legal financial obligations Plaintiffs themselves incurred. See Harvey, 605 F.3d at 1080 (“That restoration of [disenfranchised felons’] voting rights requires them to pay all debts owed under their criminal sentences does not transform their criminal fines into poll taxes.”). By exercising its “power to fix qualifications,” Harper v. Va. State Bd. of Elections, 383 U.S. 663, 668, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), Tennessee permissibly limits the vote to individuals without felony convictions, Richardson, 418 U.S. at 56, 94 S.Ct. 2655, and lawfully conditions the restoration of voting rights on satisfaction of such court-ordered obligations that exist independently of the re-enfranchisement statute or any tax law violations. Thus, even if the Twenty-Fourth Amendment applies, Tennessee’s re-enfranchisement statute does not violate it because the restitution and child-support-payment provisions fail to qualify as the sort of taxes the Amendment seeks to prohibit.
C. Privileges or Immunities
Largely dormant since the Supreme Court’s decision in the SlaughterHouse Cases, 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1872), significantly restricted its reach, see Craigmiles v. Giles, 312 F.3d 220, 229 (6th Cir.2002), the Privileges or Immunities Clause of the Fourteenth Amendment prohibits states from abridging the privileges or immunities of national *752 citizenship. U.S. Const, amend. XIV, § 1. As the district court correctly observed, no authority recognizes the right to vote in federal elections as a privilege or immunity of United States citizenship. Indeed, dicta in several historical Supreme Court cases suggest the opposite. See Minor v. Happersett, 88 U.S. (21 Wall.) 162, 178, 22 L.Ed. 627 (1874); Pope v. Williams, 193 U.S. 621, 632, 24 S.Ct. 573, 48 L.Ed. 817 (1904), amended by Dunn v. Blumstein, 405 U.S. 330, 337 n. 7, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). But in any event, even if voting qualifies as a privilege or immunity of citizenship, Plaintiffs fail to state a claim because, under the Supreme Court’s holding in Richardson, the Constitution authorizes the complete abrogation of felons’ voting rights. 418 U.S. at 56, 94 S.Ct. 2655. Accordingly, we find that the district court correctly rejected Plaintiffs’ privileges or immunities argument because adopting it would require the absurd holding that § 1 of the Fourteenth Amendment proscribes the very same practice the Supreme Court expressly deemed permissible under § 2 of that same amendment.
D. Tennessee Ex Post Facto
In the district court, Plaintiffs challenged the restitution and child-support-payment provisions under, the Ex Post Facto Clauses of both the U.S. and Tennessee Constitutions, which prohibit the enactment of any law that imposes punishment for an act after its commission, or imposes additional punishment to that previously prescribed. Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 67 L,Ed.2d 17 (1981); U.S. Const, art. I, § 10; Tenn, Const, art. I, § 11. The district court rejected both claims, and Plaintiffs appeal only the rejection of their Tennessee constitutional claim.
Analysis of ex post facto claims involves a two-part inquiry. First, we ask whether the challenged law constitutes a civil, regulatory measure, or, instead, a punitive one. Smith v. Doe, 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). To answer this question, we look to “whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.” Hudson v. United States, 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (internal quotation marks and citation omitted). If we answer “punitive,” then the inquiry ends with a determination that the law violates the Ex Post Facto Clause. See Smith, 538 U.S. at 92-93, 123 S.Ct. 1140. Second, even if the legislature intended to classify the law as civil, we still must ask whether “the statutory scheme was so punitive either in purpose or effect as to negate that intention.” United States v. Ward, 448 U.S. 242, 248-49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). The non-exclusive and non-dispositive seven-factor analysis developed in Kennedy v. Mendoza-Martinez, guides this inquiry. 372 U.S. 144, 168-69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). “ ‘[0]nly the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.” Hudson, 522 U.S. at 100, 118 S.Ct. 488 (quoting Ward, 448 U.S. at 249, 100 S.Ct. 2636).
When it enacted § 40-29-202(b) — (c), the Tennessee legislature did not explicitly disclose either a civil or punitive intention. Although it situated the challenged provisions in the “Criminal Procedure” volume of the Tennessee Code, the specific chapter bears the title “Restoration of Citizenship,” which serves a civil, non-punitive purpose — namely, regulating the process through which felons may regain the right to vote. Indeed, the law’s statutory neighbor, § 40-29-203, also in the “Restoration of Citizenship” chapter, establishes a pro *753 cedure for a felon’s application for and the state’s issuance of a voter registration card — a process obviously unrelated to punishment. That the legislature chose to put § 40-29-202 in the “Criminal Procedure” title makes it no more punitive than other chapters found in the same title, such as chapter 14, which establishes procedures for the appointment of counsel for indigents; chapter 27, which covers procedures for pardons; or chapter 30, which entitles convicts to request DNA analysis of evidence. In other words, although the statute here, like others located in the “Criminal Procedure” title, relates to the criminal justice system, its purpose may nevertheless be non-punitive. Finding no evidence that the legislature enacted the challenged provisions with punitive intentions, we turn to the second part of the ex post facto inquiry: examining whether the statute’s purpose or effect negated the legislature’s non-punitive intentions.
Our examination — using the applicable Mendoza-Martinez factors — finds no contradiction of the legislative non-punitive intent in the statute’s purpose or effect. Nothing in the record suggests a historically punitive characterization of re-enfranchisement schemes; indeed, Plaintiffs fail to cite a case supporting such treatment. Nor does the statute promote the traditional aims of punishment, since it only restores rights originally stripped by the disenfranchisement statute. Significantly, Tennessee child support law, which conditions payment on the payor’s ability to earn a living so as to avoid imposing a penal obligation, exists to protect children; and restitution payments aim to restore crime victims to the position they would have been in had the crime not occurred— not to punish the perpetrator. Moreover, the law resists classification as one imposing an affirmative disability — if Plaintiffs suffer from an affirmative disability, the disenfranchisement statute must take the blame. And, as discussed in the equal protection analysis, the restitution and child-support-payment provisions bear a rational connection to legitimate non-punitive interests of the state, and are not excessive with regard to those purposes. See Mendoza-Martinez, 372 U.S. at 168— 69, 83 S.Ct. 554 (discussing factors).
Moreover, in Trop v. Dulles, the Supreme Court expressly stated that felon disenfranchisement laws serve a regulatory, non-penal purpose. 356 U.S. 86, 96-97, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958). Accordingly, as a matter of federal law, disenfranchisement statutes do not violate the Ex Post Facto Clause of the U.S. Constitution. It necessarily follows that, if the laws that strip convicted felons of their voting rights in the first instance fail to qualify as punitive, then those that subject restoration to the fulfillment of certain conditions do not either. Like the Supreme Court’s disenfranchisement example in Trop, Tennessee’s re-enfranchisement statute serves “to designate a reasonable ground of eligibility for voting,” and thus qualifies “as a nonpenal exercise of the power to regulate the franchise.” See id. Plaintiffs raise no challenge to this analysis; in fact, they declined to appeal the district court’s ruling on their federal ex post facto claim. They argue, however, that the re-enfranchisement law deserves precisely the opposite treatment under Tennessee’s Ex Post Facto Clause because the Tennessee Supreme Court recently held that “[l]aws disenfranchising convicted felons are penal in nature.” May v. Carlton, 245 S.W.3d 340, 349 (Tenn.2008); see also Gaskin v. Collins, 661 S.W.2d 865, 868 (Tenn.1983).
Plaintiffs mistakenly rely on May. May held that for purposes of Tennessee’s habeas corpus statute, illegal disenfranchisement is a “restraint on liberty.” May, 245 *754 S.W.3d at 342 (internal quotation marks omitted). The court then granted the petitioner relief under Tennessee’s habeas corpus statute because the law at issue retroactively labeled petitioner’s crime “infamous” and thereby disenfranchised him — -which is impermissible under Tennessee law. Id. at 349 (citing Gaskin, 661 S.W.2d at 867). Other than citing Gaskin, May does not explain why this result is impermissible. See id. Gaskin, however, did not hold that laws retroactively disenfranchising felons are impermissible because they violate the Ex Post Facto Clause (Article I, Section 11) of the Tennessee Constitution. Rather, Gaskin held such laws to be impermissible because they violate Article I, Section 5 of the Tennessee Constitution, a section specifically related to elections and prompted by Tennessee’s civil war history. Gaskin, 661 S.W.2d at 866-68. To be sure, the May petitioner argued laws retroactively disenfranchising felons violate Tennessee’s Ex Post Facto Clause (in addition to Article I, Section 5). See May, 245 S.W.3d at 342. Yet, this is not the holding of May or Gaskin. Gaskin therefore provides no support for May’s observation that “[l]aws disenfranchising convicted felons are penal in nature.” May, 245 S.W.3d at 349. Neither is the “penal in nature” statement supported by other law or logic in the opinion. The “penal in nature” statement is pure dicta, insufficient to compel the conclusion that either laws retroactively disenfranchising felons or laws regulating re-enfranchisement violate the Ex Post Facto Clause of the Tennessee Constitution.
III.
For these reasons, we affirm.

. As originally filed, the lawsuit’s third plaintiff was an individual named Alexander Friedmann, who raised an additional due process claim pertinent only to himself. With the district court’s approval, the plaintiffs amended the complaint to add Joshua Roberts as a fourth plaintiff. Friedmann eventually settled his dispute, but plaintiffs' counsel inadvertently included him (and excluded Roberts) in the notice of appeal. Counsel sought to correct this error by moving to dismiss Friedmann from this appeal and substitute Roberts. Defendants consent to this correction, and we now grant the motion.

. Plaintiffs filed a motion asking this court to judicially notice two sets of responses to interrogatories. We fail to see how either document fits within Federal Rule of Evidence 201, which permits judicial notice of an adjudicative fact so long as it is “not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction *746 of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.” Sigler v. Am. Honda Motor Co., 532 F.3d 469, 476 (6th Cir.2008) (quoting Fed. R.Evid. 201(b)). Accordingly, we deny the motion. We note, however, that even if considered, these documents would not affect our resolution of the merits.

. It is worth noting that Tennessee courts expressly take into account "ability to pay” when calculating restitution and child support awards. Tenn.Code Ann. § 40-35-304(d) ("In determining the amount and method of payment or other restitution, the court shall consider the financial resources and future ability of the defendant to pay or perform.”); Ford v. Ford, No. 01A01-9611-CV-00536, 1998 WL 730201, at *2 (Tenn.Ct.App. Oct.21, 1998) ("Tennessee's child support guidelines establish a rebuttable presumption of a minimum acceptable amount of support based on the noncustodial parent’s ability to pay.”).