IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 20, 2018 Session[1]

## STATE OF TENNESSEE v. ROSCOE DIXON

**Appeal from the Circuit Court for Shelby County**
**No. CT-000947-16    Rhynette N. Hurd, Judge**

————————————————————

## No. W2017-01051-COA-R3-CV

————————————————————

Former state senator convicted of bribery appeals the trial court's denial of the restoration of his voting rights based on Tennessee Code Annotated section 40-29-204. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and BRANDON O. GIBSON, JJ., joined.

Kyle Mothershead, David W. Garrison, and Scott P. Tift, Nashville, Tennessee, for the appellant, Roscoe Dixon.

Herbert H. Slatery, III, Attorney General and Reporter;  Andreé S. Blumstein, Solicitor General; Sarah K. Campbell, Special Assistant to the Solicitor General and the Attorney General, for the appellee, State of Tennessee - Civil.

## OPINION

### Background

In 2005, Petitioner/Appellant Roscoe Dixon ("Petitioner") was investigated and prosecuted in federal court as part of the Tennessee Waltz corruption sting.[2] On June 8,

---

[1] Oral argument in this case was conducted at Union University.

[2] Tennessee Waltz was "a multiyear investigation initiated in response to allegations of corruption by Tennessee elected officials." **United States v. Crutchfield**, 379 F. Supp. 2d 913, 915 (W.D. Tenn. 2005).

2006, the jury returned a verdict finding Petitioner guilty of several crimes: (1) four counts of interference with commerce by threat; and (2) one count of bribery involving federal programs. An order on judgment and sentence was entered on October 13, 2006; Petitioner was sentenced to a total of sixty-three months' incarceration and three years of supervised release.

On March 7, 2016, following the completion of his incarceration and probation, Petitioner filed a petition to restore his citizenship and voting rights under Tennessee Code Annotated section 40-29-202. Although the State of Tennessee ("the State") opposed the petition, the trial court entered an order on November 21, 2016, granting Petitioner restoration of his citizenship rights, other than his right to hold public office or possess firearms.

On December 7, 2016, the State filed a motion to alter or amend the trial court judgment, arguing that Petitioner's voting rights could not be restored due to the operation of Tennessee Code Annotated section 40-29-204(3), which provides that for certain types of crimes, voting rights may not be restored. Petitioner thereafter responded in opposition. Petitioner did not deny that he had been convicted of a crime specified by section 40-29-204(3). Petitioner argued, however, that the statute could not apply because his conviction occurred prior to July 1, 2006, the effective date of the statute and the date the statute specified for its terms to apply. Instead, Petitioner asserted that his conviction occurred on June 8, 2006, the day the jury verdict was returned. The State argued, however, that Petitioner's conviction occurred on the date the judgment was entered, well after the effective date of the statute. The trial court ruled that section 40-29-204(3) was applicable to Petitioner's conviction and that he was therefore forever ineligible to vote. The trial court therefore entered an amended order granting Petitioner's petition for restoration of civil rights, excluding the right to vote, the right to possess firearms, and the right to hold public office. From this order, Petitioner now appeals.

**Issues Presented**

Petitioner raises three issues in this appeal, which are taken from his brief and slightly restated:

1. Whether Petitioner was convicted of his offense before or after the effective date of section 40-29-204(3).

2. Whether the ex post facto clause of the Tennessee Constitution prohibits application of section 40-29-204(3) to Petitioner, where Petitioner's offense was committed prior to the enactment of section 40-29-204(3).

3. Whether Petitioner's right to vote is permanently forfeited under section 40-29-204(3)?

2

## Analysis
## I.

This appeal involves the interpretation of various statutes. As such, our review is de novo with no presumption of correctness. *McFarland v. Pemberton*, 530 S.W.3d 76, 91 (Tenn. 2017) (quoting *Martin v. Powers*, 505 S.W.3d 512, 518 (Tenn. 2016)). As explained by our supreme court:

> When determining the meaning of statutes, our primary goal "is to carry out legislative intent without broadening or restricting the statute beyond its intended scope." *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013) (quoting *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011)). We presume that every word in a statute [or rule] has meaning and purpose and that each word's meaning should be given full effect as long as doing so does not frustrate the [drafter's] obvious intention. *Id.* Words "'must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" *Id.* (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)). When a statute's meaning is clear, we "'apply the plain meaning without complicating the task' and enforce the statute as written." *Id.* (quoting *Lind*, 356 S.W.3d at 895).

*Ellithorpe v. Weismark*, 479 S.W.3d 818, 827 (Tenn. 2015).

A brief review of the statutes surrounding the deprivation and restoration of voting rights is helpful to our analysis. As an initial matter, the Tennessee Constitution provides that "[l]aws may be passed excluding from the right of suffrage persons who may be convicted of infamous crimes." Tenn. Const., art. IV, § 21.  To that end, the Tennessee General Assembly enacted Tennessee Code Annotated section 40-20-112, which states: "Upon conviction for any felony, it shall be the judgment of the court that the defendant be infamous and be immediately disqualified from exercising the right of suffrage." *See also* Tenn. Code Ann. § 2-19-143 (providing that those convicted of infamous crimes in this state or under federal law shall not be permitted to vote unless such person has been pardoned by the appropriate authority or "the person's full rights of citizenship have otherwise been restored"), *recognized as unconstitutional when applied retroactively by May v. Carlton*, 245 S.W.3d 340, 345 (Tenn. 2008) (citing *Gaskin v. Collins*, 661 S.W.2d 865, 867 (Tenn. 1983) (holding that statute expanding the definition of infamous crimes for which felons are disenfranchised and applying that definition to disenfranchise felons regardless of when they were convicted violated constitutional provision

3

prohibiting retroactive disenfranchisement under Tennessee constitutional provisions related to suffrage)).[3] The Tennessee Constitution further provides, however, that "the right of suffrage, as hereinafter declared, shall never be denied to any person entitled thereto, except upon conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of competent jurisdiction." Tenn. Const., art. I, § 5. As such, those rendered infamous by the conviction of a crime are not permitted to vote following a judgment to that effect unless and until a pardon occurs or voting rights are restored.

Petitioner does not dispute that upon his conviction in federal court, he was rendered infamous and thereby disqualified from voting. Petitioner asserts, however, that under Tennessee law applicable at the time, he was entitled to restoration of his voting rights. Under Tennessee Code Annotated section 40-29-101(a), "[p]ersons rendered infamous or deprived of the rights of citizenship by the judgment of any state or federal court may have their full rights of citizenship restored by the circuit court." As such, "[t]hose convicted of an infamous crime may petition for restoration upon the expiration of the maximum sentence imposed for the infamous crime." *Id.* § 40-29-101(c). With regard to restoration of civil rights, however, the Tennessee Supreme Court has previously noted that "a person who is adjudged infamous or deprived of rights of citizenship does not have an absolute right to the restoration of the full rights of citizenship even upon satisfying the requirements [of Tennessee's restoration statutes]." ***State v. Johnson***, 79 S.W.3d 522, 527 (Tenn. 2002). Thus, "the restoration of citizenship process is subject to the requirements and restrictions imposed by the legislature." ***Id.***

Pursuant to this authority, in 2006, the Tennessee General Assembly enacted Tennessee Code Annotated section 40-29-204, which became effective on July 1, 2006.[4] This statute provides that certain crimes are permanently ineligible for restoration of voting rights, including crimes involving bribery and official misconduct. As is relevant to this appeal, section 40-29-204 stated:

Notwithstanding the provisions of this part, the following persons shall

---

[3] Section 2-19-143 was enacted in 1981, far before the commission of the crime, the jury verdict, or the judgment at issue in this case. As such, Petitioner does not appear to dispute its applicability. Likewise, Petitioner did not argue in the trial court nor does he argue on appeal that the application of Tennessee Code Annotated section 40-29-204(3) to him would violate Article I, section 5 of the Tennessee Constitution, the provision held to have been violated in ***Gaskin***. *See **Gaskin***, 661 S.W.2d at 866 (citing Tenn. Const. art. I, § 5). As such, any argument to that effect is waived. *See **In re Adoption of E.N.R.***, 42 S.W.3d 26, 33 (Tenn. 2001) (holding a constitutional challenge waived where it was not raised in the trial court).

[4] The statute was approved by the Tennessee General Assembly on May 17, 2006 and signed by the Governor on June 5, 2006.

4

never be eligible to register and vote in this state:

\* \* \*

(3) Those convicted on or after July 1, 2006, of:

\* \* \*

(B) Any other violation of Title 39, Chapter 16, Parts 1, 4 or 5 designated as a felony; . . .

Tenn. Code Ann. § 40-29-204 (effective July 1, 2006); *see also* Tenn. Code Ann. § 39-16-104 ("A public servant commits an offense who requests a pecuniary benefit for the performance of an official action knowing that the public servant was required to perform that action without compensation or at a level of compensation lower than that requested."); Tenn. Code Ann. § 39-16-402 (providing the offense of official misconduct). The statute was later amended to provide that the subsection (3) would apply to "any violation containing the same elements and designated as a felony in any other state or federal court[.]" Tenn. Code Ann. § 40-29-204, *enacted by* 2011 Tennessee Laws Pub. Ch. 184 (H.B. 1117), eff. July 1, 2011 (adding the above language).[5] Petitioner does not dispute that this law encompasses the crimes he was convicted of in federal court.[6]

---

[5] Petitioner did not argue in the trial court nor does he argue on appeal that this statute is inapplicable because the language regarding federal crimes was added well after the commission of the crimes at issue and the judgment thereon. Indeed, Petitioner specifically conceded in the trial court that "[t]here is no question that [section] 40-29-204(3) prohibits persons "convicted" of offenses like [Petitioner's] after July 1, 2006, from ever having their voting rights restored." Any argument to the contrary is therefore waived.

[6] As such, we apply the current version of the statute in this case. The current version of the statute reads in pertinent part as follows:

Notwithstanding this part, the following persons shall never be eligible to register and vote in this state:

\* \* \*

(3) Those convicted on or after July 1, 2006, of:

\* \* \*

(B) Any other violation of title 39, chapter 16, parts 1, 4 or 5 designated as a felony or any violation containing the same elements and designated as a felony in any other state or federal court; . . . .

5

Instead, Petitioner argues that section 40-29-204(3) does not apply to him because he was not "convicted on or after July 1, 2006[.]" Rather, Petitioner asserts that he was "convicted" on June 8, 2006, the date the jury returned its verdict. In response, the State asserts that Petitioner was "convicted" on October 13, 2006, the date a judgment of conviction was entered. The parties' varying arguments rest on the proper definition of the term "convicted" in section 40-29-204(3). Because the term is not defined by the statute, we look to other sources to determine its definition in light of the statute's purpose. *See **Womack v. Corr. Corp. of Am.***, 448 S.W.3d 362, 366 (Tenn. 2014) (quoting *Mills*, 360 S.W.3d at 368) ("The words 'must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'").

Both parties' interpretations of section 40-29-204(3) find support in Tennessee caselaw. Indeed, Tennessee courts have previously held that the term "conviction" has two different definitions depending on the context. *See **State v. Vasser***, 870 S.W.2d 543, 546 (Tenn. Crim. App. 1993). First, with regard to the "technical definition," the Tennessee Court of Criminal Appeals has explained

> In a general sense, a "conviction" has been defined as "the result of a criminal trial which ends in a judgment or sentence that the accused is guilty as charged." *Black's Law Dictionary* 333 (6th ed. 1990). In one sense, it is viewed as necessarily including the judgment on the finding of guilt or verdict. In **McClain v. State**, 186 Tenn. 401, 210 S.W.2d 680, 681 (1948), the Court stated that absent "a minute entry showing that the Trial Judge approved the verdict . . . and sentenced the Defendant, the conviction of guilt is incomplete." *Accord **Ray v. State***, 576 S.W.2d 598, 602 (Tenn. Crim. App. 1978); **Spencer v. State**, 125 Tenn. 64, 69–70, 140 S.W. 597, 598–599 (1911) (technically, "a conviction involves, not only a verdict, but also a sentence passed by the court"). In fact, this has been called the "technical" meaning of "conviction." **Vasquez v. Courtney**, 272 Or. 477, 537 P.2d 536, 537 (1975).
>
> Actually, the technical meaning is used in terms of requiring a "judgment of conviction." *See* Tenn. R. Crim. P. 32(e) ("judgment of conviction shall set forth the plea, the verdict or findings, and the adjudication and sentence"). In this sense, the judgment provides the legal authority for the executive branch of government to incarcerate a person who is sentenced to confinement. *See* T[enn. Code Ann.] §§ 40-20-101, 40-23-101.

*Vasser*, 870 S.W.2d at 545–46. The technical definition "is normally used, absent statutory definition to the contrary, when referring to the indirect or subsequent consequences which might result, such as, future civil disabilities." ***Id.*** at 546 (citing

*Vasquez*, 537 P. at 537–38).

The term "conviction," however, does not always implicate the necessity of a judgment. *See Vasser*, 870 S.W.2d at 546. As such, the Tennessee Supreme Court has held that a conviction "does not ordinarily include nor imply judgment or sentence, but has a meaning entirely separate and apart from judgment or sentence." *State v. Garrett*, 135 Tenn. 617, 188 S.W. 58, 60 (Tenn. 1916). Rather, the term "is used to signify the jury's verdict of guilty, and as something precedent to, and distinct from, judgment or sentence." *Id.* Thus,

> [T]he legislature often uses the word "conviction" to denote a stage of the process occurring in the trial court after which such further action by the trial court must be taken or may be authorized. In this context, "when the word 'conviction' is used in connection with the successive steps in a criminal case, the reference is to the verdict."

*Vasser*, 870 S.W.2d at 546 (quoting 21A Am.Jur.2d *Criminal Law* § 1024 at 569). Thus, "[a] conviction in the 'general sense' is the establishment of guilt by a guilty plea or a verdict independent of sentence and judgment." *Rodriguez v. State*, 437 S.W.3d 450, 453 (Tenn. 2014) (citing *Vasser*, 870 S.W.2d at 546.). This is often the case where a statute or provision makes a distinction between the conviction and the judgment. *See*, *e.g.,* Tenn. Const. art. I, § 5 (proving that the right to vote shall not be removed "except upon conviction . . . and judgment"); Tenn. Code Ann. § 40-20-111 (discussing both judgment and conviction); Tenn. Code Ann. § 40-20-112 (same). In determining the particular definition applicable, we also must read a statute in pari materia with other statutes relating to the same subject or having the same purpose. *Rodriguez*, 437 S.W.3d at 453 (citing *Mandela v. Campbell*, 978 S.W.2d 531, 534 (Tenn. 1998) (holding that statutes relating to the same subject or having a common purpose must be read in pari materia)).

Turning to the particular statute at issue in this case, we note that unlike other statutes in which the terms "conviction" or "convicted" have been found to be defined in the general sense, section 40-29-204(3) does not refer to the successive phases of a criminal trial, nor does it specifically refer to both a conviction and judgment so as to draw a distinction between the two. *See Vasser*, 870 S.W.2d at 546. As such, neither of these factors favor defining the term "convicted" in section 40-29-204(3) in the general sense.

Petitioner also asserts that section 40-29-204(3) does not involve a future civil disability so as to implicate the technical definition of the term "convicted." Respectfully, we cannot agree. Disenfranchisement has long been considered a civil disability. *See Fisher v. State*, No. W2016-01409-COA-R3-CV, 2017 WL 2839742, at *1 (Tenn. Ct. App. July 3, 2017), *perm. app. denied* (Tenn. Nov. 17, 2017) (citing *Cole v. Campbell*,

968 S.W.2d 274, 276 (Tenn. 1998) (discussing civil disabilities "in early English common law")). The Tennessee Supreme Court has recognized that Tennessee's "[s]pecific disability statutes include the **loss of the right to vote**, the loss of the right to hold public office, the loss of the right to serve as a fiduciary, and the loss of the right to possess a handgun." *State v. Johnson*, 79 S.W.3d 522, 527 (Tenn. 2002) (internal citations omitted) (emphasis added); *see also Cole*, 968 S.W.2d at 276 (describing the loss of the right to vote as a civil disability).

Petitioner asserts, however, that section 40-29-204(3) does not involve disenfranchisement but rather involves the restoration of voting rights, for which the technical definition is not implicated. While at least one federal court has indicated that Tennessee's re-enfranchisement scheme does not implicate an affirmative disability, the same cannot be said of section 40-29-204(3) specifically. *See Johnson v. Bredesen*, 624 F.3d 742 (6th Cir. 2010). In *Johnson*, the United States Court of Appeals for the Sixth Circuit distinguished Tennessee's disenfranchisement laws, which it suggested impose an affirmative disability, with laws regulating the restoration of voting rights, which it indicated did not impose an affirmative disability. *Id.* at 753 (stating that "if Plaintiffs suffer from an affirmative disability, the disenfranchisement statute must take the blame" rather than the re-enfranchisement scheme). *Johnson*, however, did not involve section 40-29-204, but rather Tennessee Code Annotated section 40-29-202(b) and (c). *Id.* Section 40-29-202 (b) and (c) provide specific conditions that must be met prior to a restoration of voting rights, such as the payment of court costs and child support.

The same is not true of Tennessee Code Annotated section 40-29-204(3). Indeed, rather than placing conditions on re-enfranchisement, this statute makes disenfranchisement for certain crimes permanent. Although section 40-29-204(3) is included in the statutory scheme involving restoration of citizenship rights, it is therefore more closely aligned with those statutes that govern disenfranchisement than re-enfranchisement. Section 40-29-204(3) deprives persons of their statutory ability to restore voting rights notwithstanding the expiration of any sentence. Thus, section 40-29-204(3) governs the extent of the deprivation of the right to vote with regard to certain crimes and contains no specific procedures to restore voting rights under that statute. Stated another way, section 40-29-204(3) does not govern the reestablishment of voting rights but makes any deprivation permanent, where the statute is applicable. Clearly, this statute therefore involves a future civil disability on the right to vote. Because the statute does not specify otherwise, the technical definition of "convicted" is applicable. *See Vasser*, 870 S.W.2d at 546.

Other surrounding provisions support our use of the technical definition in this case. First, we note that other statutes that govern disenfranchisement specifically state that disenfranchisement occurs at the time of judgment, rather than verdict. *See* Tenn. Code Ann. 40-20-112 ("Upon conviction for any felony, it shall be the judgment of the

court that the defendant be infamous and be immediately disqualified from exercising the right of suffrage."). Likewise, our re-enfranchisement statute applicable to crimes not specified under section 40-29-204 requires that the right to vote be removed only at judgment. *See* Tenn. Code Ann. 40-29-202(a) ("A person rendered infamous and deprived of the right of suffrage by the judgment of any state or federal court is eligible to apply for a voter registration card and have the right of suffrage restored upon: [certain conditions being met.]"); *c.f.* Tenn. Code Ann. § 40-29-105 (outlining the various types of restoration procedure applicable based upon the date of "conviction," but stating that the deprivation takes place at the time of judgment rather than verdict). In a similar situation, the Tennessee Supreme Court has previously held that the express requirement of a judgment in other statutes in the statutory scheme mandated that the term "conviction" in the specific statute at issue be defined by its technical definition. *See* **Rodriguez**, 437 S.W.3d at 454 ("Based on these repeated references to the terms "judgment" or "judgments," we conclude that the Post-Conviction Act requires the entry of a judgment."). Finally, we note that the Tennessee Constitution makes clear that the right to vote may not be removed until "judgment" is entered on the jury verdict. Tenn. Const., art. I, § 5. It would be anomalous to hold that we may determine Petitioner's ability to reestablish his voting rights by a date prior to the date upon which his voting rights were actually removed. Although we recognize that this result is harsh as applied to Petitioner, we must conclude that the technical definition of the term "convicted" is used in Tennessee Code Annotated section 40-29-204(3). Because Petitioner's "conviction" occurred after July 1, 2006, Petitioner is permanently barred from voting under the terms of that statute.

## II.

Petitioner next asserts that to apply section 40-29-204(3) to him violates the Tennessee Constitution's prohibition on ex post facto laws. *See* Tenn. Const. Art. I, § 11 ("That laws made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal, are contrary to the principles of a free Government; wherefore no Ex post facto law shall be made."); *see also* U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . make any . . . ex post facto Law"); *see generally* **Agee v. State**, 111 S.W.3d 571, 576 (Tenn. Crim. App. 2003) ("Generally, ex post facto laws are those that make an act criminal that was not criminal at the time it was committed."). Specifically, Petitioner asserts that "a law enacted subsequent to commission of an offense cannot be used as a basis to deprive the offender of his voting rights" and that to apply section 40-29-204(3), enacted after the commission of the crimes involved, therefore violates the Ex Post Facto Clause of the Tennessee Constitution.

The State argues, however, that any argument that the application of section 40-

9

29-204(3) to the facts of this case violates the prohibition against ex post facto laws is waived.[7] We agree. Here, Petitioner did not raise the Ex Post Facto Clause in any fashion in his response to the State's motion to alter or amend. Rather, Petitioner raised this argument for the first time on appeal. "It is well-settled in Tennessee that 'courts do not decide constitutional questions unless resolution is absolutely necessary to determining the issues in the case and adjudicating the rights of the parties.'" *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009) (quoting *State v. Taylor*, 70 S.W.3d 717, 720 (Tenn. 2002)) (noting that an even higher standard is applicable in facial challenges to statutes); *see also* **City of Elizabethton v. Carter Cty.**, 204 Tenn. 452, 463, 321 S.W.2d 822, 827 (Tenn. 1958) ("We do not have any sympathy for the practice of raising constitutional questions for the first time on appeal, unless a statute is so obviously unconstitutional on its face as to obviate the necessity for any discussion."). In a similar situation, the Tennessee Court of Criminal Appeals has held that the argument was waived:

> The petitioner argues that the statute, as amended, should not be applicable to his case because it "constitutes an unconstitutional ex post facto law." He argues it is unconstitutional to apply the 2009 amended provisions to his 1999 convictions. However, the constitutionality issue is raised by the petitioner for the first time on appeal. "A party may not raise an issue for the first time in the appellate court." *State v. Turner*, 919 S.W.2d 346, 356–57 (Tenn. Crim. App. 1995). As point[ed] out by the State, "this rule applies to an attempt to make a constitutional attack upon the validity of a statute for the first time on appeal unless the statute involved is so obviously unconstitutional on its face as to obviate the necessity for any discussion." *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983). That exclusion is not applicable in this case. Thus, by his failure to previously raise the issue, the petitioner has waived its review on appeal.

*Childress v. State*, No. W2012-02104-CCA-R3-HC, 2013 WL 793211, at *3 (Tenn. Crim. App. Mar. 1, 2013), *perm. app. denied* (Tenn. Aug. 13, 2013); *see also* **Morris v. Fortner**, No. M2008-01022-CCA-R3-HC, 2009 WL 690304, at *3 (Tenn. Crim. App. Feb. 26, 2009) (applying waiver to an ex post facto argument where the argument was not raised in the trial court).

Here, Petitioner does not state that the statute is so obviously unconstitutional as to obviate the necessity for discussion.[8] Indeed, Petitioner appears to concede that his failure

---

[7] The State does not concede that application of section 40-29-204(3) violated the Tennessee Constitution's prohibition against ex post facto laws in this case. Given our resolution of the waiver argument, we need not address this issue.

[8] Specifically, Petitioner states in his brief that section 40-29-204(3) "is not in and of itself unconstitutional" but argues that it is unconstitutional as applied to the facts of this case. Under

to raise this argument in the trial court resulted in a waiver on appeal and asks this Court to nevertheless exercise our discretion to consider this issue under Rule 13 of the Tennessee Rules of Appellate Procedure. Pursuant to Rule 13(b), this Court has discretion to consider issues not properly raised "in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process." *See also* Tenn. R. App. P. 13(b), advisory comm'n cmt. ("It is intended that this discretion be sparingly exercised.").

From our review of the parties' briefs, it appears that the question of whether a voter disenfranchisement law is governed by the ex post facto prohibition has been the subject of some debate. *Compare **May v. Carlton***, 245 S.W.3d 340, 345 (Tenn. 2008) ("Laws disenfranchising convicted felons are penal in nature."), *with **Johnson v. Bredesen***, 624 F.3d 742, 754 (6th Cir. 2010) ("The 'penal in nature' statement [in ***May***] is pure dicta, insufficient to compel the conclusion that *either* laws retroactively disenfranchising felons or laws regulating re-enfranchisement violate the Ex Post Facto Clause of the Tennessee Constitution.") (emphasis in original). Given that this issue is not well-settled and the State was not given notice of Petitioner's intention to rely on this argument until this appeal, we decline to exercise our discretion to consider this issue where it was not raised or properly developed in the trial court.[9]

## Conclusion

The judgment of the Circuit Court of Shelby County is affirmed and this cause is remanded for all further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellant, Roscoe Dixon, and his surety.

_____
J. STEVEN STAFFORD, JUDGE

---

***Lawrence***, however, the statute must be obviously unconstitutional "on its face" to avoid waiver. ***Lawrence***, 655 S.W.2d at 929; *see also **In re Adoption of E.N.R.***, 42 S.W.3d at 33 (citing this language from ***Lawrence*** with approval).

[9] We therefore express no opinion as to any issue related to Petitioner's ex post facto argument.