IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 5, 2021 Session

**ERNEST FALLS ET AL. V. MARK GOINS ET AL.**

**Appeal from the Chancery Court for Davidson County**
**No. 20-0704-III      Ellen Hobbs Lyle, Chancellor**

_____

**No. M2020-01510-COA-R3-CV**
_____

This case concerns the restoration of voting rights of a Tennessee citizen who was convicted of a felony in Virginia and subsequently granted clemency by the Governor of Virginia. Because the voting applicant did not provide evidence that he paid outstanding court costs, restitution, and/or child support as is required by Tenn. Code Ann. § 40-29-202, the election commission denied his application to vote. The voting applicant appealed the election commission's decision to the circuit court. The circuit court upheld the election commission's decision as valid. We agree with the trial court and affirm the trial court's judgment.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

William L. Harbison, Lisa K. Helton, and Christopher C. Sabis, Nashville, Tennessee, and Danielle Marie Lang, Blair Bowie, and Caleb Jackson, Washington, D.C., for the appellant, Ernest Falls.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Blumstein, Solicitor General, Janet Irene M. Kleinfelter, Deputy Attorney General, and Alexander S. Rieger, Assistant Attorney General, for the appellees, Mark Goins, in his official capacity as Coordinator of Elections for the State of Tennessee, Tre Hargett, in his official capacity as Secretary of State of the State of Tennessee, and Herbert Slatery, III, in his official capacity as the Attorney General for the State of Tennessee.

**OPINION**

In 1986, Ernest Falls was convicted of involuntary manslaughter in Virginia. He served his sentence and was released from prison in 1987. Mr. Falls relocated to Grainger County, Tennessee in 2018. In February 2020, the Governor of Virginia restored his rights of citizenship in Virginia. The document restoring Mr. Falls's rights states:

COMMONWEALTH of VIRGINIA
Executive Department

TO ALL WHOM THESE PRESENTS SHALL COME – GREETINGS

WHEREAS, Ernest L. Falls after being convicted and sentenced for crime(s) committed prior to January 14, 2020, when the Executive completed review of the particulars of the individual's case; and

WHEREAS, Ernest L. Falls, by reason of conviction(s), suffers political disabilities, to wit denial of the right to vote, to hold public office, to serve on a jury, to be a notary public and to ship, transport, possess or receive firearms; and

WHEREAS, it appears that Ernest L. Falls has rejoined society free from state supervision and it seems appropriate to the Executive to remove certain of those political disabilities by restoring the right to vote, hold public office, serve on a jury, and to be a notary public;

NOW, THEREFORE, I, Ralph S. Northam, Governor of the Commonwealth of Virginia, by virtue of the authority vested in me, do hereby remove the political disabilities, except the ability to ship, transport, possess or receive firearms, under which Ernest L. Falls labors by reason of conviction as aforesaid, and do hereby restore the rights to vote, hold public office, serve on a jury, and to be a notary public.

On June 4, 2020, Mr. Falls attempted to register to vote in Tennessee and disclosed his 1986 felony conviction. The Grainger County Administrator of Elections denied his registration because Mr. Falls failed to provide evidence that he owes no fees or restitution for his Virginia conviction.[1]

---

[1] There is no evidence in the record that Mr. Falls actually owes any fees, restitution, or child support; however, he has not provided evidence that he does not owe any of these financial obligations.

On July 21, 2020, Mr. Falls and Arthur Bledsoe, a Tennessee citizen who had been convicted of a felony in North Carolina,[2] filed a Verified Complaint for Declaratory and Injunctive Relief against state officials, Mark Goins, Tre Hargett, and Herbert Slatery, III in their official capacities as Tennessee's Coordinator of Elections, Secretary of State, and the Attorney General, respectively (collectively referred to as "Defendants"). The trial court entered a memorandum and order denying the motion for temporary injunction, finding that Mr. Falls had not demonstrated a "substantial likelihood of success on the merits." On August 21, 2020, Mr. Falls filed a motion for summary judgment arguing that his full rights of citizenship had been restored by the Governor of Virginia, as required by Tenn. Code Ann. § 2-19-143(3), and therefore, he was entitled to vote in Tennessee. He asserted that Tenn. Code Ann. § 40-29-202, a statute requiring disenfranchised voters to pay restitution, court costs, and any outstanding child support, did not apply to him. Defendants filed their response in opposition to the motion for summary judgment asserting that until Mr. Falls provided evidence of compliance with the re-enfranchisement provisions of Tenn. Code Ann. § 40-29-202, he was not entitled to vote in Tennessee.

The chancery court denied Mr. Falls's motion for summary judgment but granted summary judgment to Defendants upon its conclusion that Tenn. Code Ann. § 40-29-202 requires that Mr. Falls "must pay the court costs and restitution associated with [his] criminal conviction[] before [he is] eligible to vote in Tennessee." The trial court noted that "[r]equiring the Plaintiffs to comply with the laws of this state, including complying with child support obligations, restitution orders, and other court orders, is both rational and constitutional." Mr. Falls appeals raising the following issue for our review:

> Whether Appellant Ernest Falls has been unlawfully denied the right to vote under the Tennessee Constitution Art. I, § 5 and Tenn. Code Ann. § 2-19-143(3)—which states that Tennesseans convicted of felonies in other states are disenfranchised unless they have their full rights of citizenship restored by the governor of the state of conviction, by the law of the state of conviction, or under the law of Tennessee—where Appellant Falls only has a felony conviction from Virginia and has had his full rights of citizenship restored by the Governor of Virginia.

STANDARD OF REVIEW

This appeal arises from the grant of summary judgment by the trial court. We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). This means that "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and

---

[2] Mr. Bledsoe has not joined in this appeal; therefore, this Opinion will focus solely on Mr. Falls.

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04.

In this case, the parties agree that there are no factual disputes. Rather, the dispute hinges on statutory construction and application of the statutes to the undisputed facts of Mr. Falls's situation. "The proper interpretation of a statute is an issue of law that may commonly be decided on summary judgment." *Najo Equip. Leasing, LLC v. Comm'r of Revenue*, 477 S.W.3d 763, 766 (Tenn. Ct. App. 2015). Our review of the construction and application of statutes is de novo, affording no deference or presumption of correctness to the decision of the lower court. *Heirs of Ellis v. Estate of Ellis*, 71 S.W.3d 705, 710 (Tenn. 2002).

Our Supreme Court has explained that when interpreting a statute, we must "'ascertain and give effect to the legislative intent without unduly restricting or expanding [the] statute's coverage beyond its intended scope.'" *Memphis Publ'g Co. v. Cherokee Child. & Fam. Servs., Inc.*, 87 S.W.3d 67, 74 (Tenn. 2002) (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). When determining legislative intent, "we first must look to the text of the statute and give the words of the statute 'their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" *Coleman v. Olson*, 551 S.W.3d 686, 694 (Tenn. 2018) (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)). We need not consider sources of information outside the text of the statute when the statutory language is clear and unambiguous. *Id.* (citing *Frazier v. State*, 495 S.W.3d 246, 249 (Tenn. 2016)). However, "statutes should not be interpreted in isolation. The overall statutory framework must be considered, and '[s]tatutes that relate to the same subject matter or have a common purpose must be read *in pari materia* so as to give the intended effect to both.'" *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 846 (Tenn. 2019) (quoting *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015)). When "resolving potential conflicts between statutes, courts seek a reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws." *O'Neal v. Goins*, No. M2015-01337-COA-R3-CV, 2016 WL 4083466, at *4 (Tenn. Ct. App. July, 29 2016) (citing *LensCrafters Inc. v. Sundquist*, 33 S.W.3d 772, 777 (Tenn. 2000)). Furthermore, when two statutes exist on the same topic, "the more specific of two conflicting statutory provisions controls." *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 872 (Tenn. 2016) (citing *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010)); *see also Cont'l Tenn. Lines, Inc. v. McCanless*, 354 S.W.2d 57, 58-59 (Tenn. 1962) (quoting Wade v. Manning, 28 S.W.2d 642, 649 (Tenn. 1930)) ("'Specific provisions relating to a particular subject must govern in respect to that subject, as against general provisions in other parts of the law which might be broad enough to include it.'"). Finally, "a more recent enactment will take precedence over a prior one to the extent of any inconsistency between the two." *Moorcroft v. Stuart*, No. M2013-02295-COA-R3-CV, 2015 WL 413094, at *10 (Tenn. Ct. App. Jan. 30, 2015). With these principles in mind, we turn to the substance of the appeal.

ANALYSIS

We begin with the Constitution of the State of Tennessee which states that "the right of suffrage . . . shall never be denied to any person entitled thereto, except upon a conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of competent jurisdiction." TENN. CONST. art. I, § 5.[3] The Tennessee Constitution further provides that every voter who meets constitutional qualifications "shall be entitled to vote in all federal, state, and local elections held in the county or district in which such person resides" except that "[l]aws may be passed excluding from the right of suffrage persons who may be convicted of infamous crimes." *Id.* at IV, §§ 1, 2. Under the Tennessee Constitution, suffrage is a "self-executing" constitutional right; however, the legislature is empowered to curtail the right of suffrage when a person has been convicted of an infamous crime. *Crutchfield v. Collins*, 607 S.W.2d 478, 481 (Tenn. Ct. App. 1980). "[A] state may constitutionally disenfranchise convicted felons, . . . and . . . the right of felons to vote is not fundamental." *Wesley v. Collins*, 791 F.2d 1255, 1261 (6th Cir. 1986); *see also Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) (reiterating that felons who lose their right to vote no longer have a "fundamental interest [in voting] to assert").

The Tennessee Legislature has exercised its authority to disenfranchise persons convicted of "infamous" crimes and has also enacted laws to restore the right to vote to some citizens with such convictions. Tennessee Code Annotated section 40-20-112 considers infamous crimes to include "any felony" conviction. Tenn. Code Ann. § 40-20-112 ("Upon conviction for any felony, it shall be the judgment of the court that the defendant be infamous and be immediately disqualified from exercising the right of suffrage."). Subsection (3) of Tenn. Code Ann. § 2-19-143 concerns the right of suffrage for persons convicted of out-of-state infamous crimes and states:

> (3) No person who has been convicted in another state of a crime or offense which would constitute an infamous crime under the laws of this state, regardless of the sentence imposed, shall be allowed to register to vote or vote at any election in this state unless such person has been pardoned or restored to the rights of citizenship by the governor or other appropriate authority of such other state, or the person's full rights of citizenship have otherwise been restored in accordance with the laws of such other state, or the law of this state.

---

[3] The United States Constitution allows for disenfranchisement for "participation in rebellion, or other crimes." U.S. CONST., amend XIV, § 2; *Richardson v. Ramirez*, 418 U.S. 24, 54 (1974) ("[T]he exclusion of felons from the vote has an affirmative sanction in s 2 of the Fourteenth Amendment.").

Tenn. Code Ann. § 2-19-143(3). Accordingly, pursuant to Tenn. Code Ann. § 40-20-112 and Tenn. Code Ann. § 2-19-143, any person convicted of a felony is disenfranchised in Tennessee until the franchise is restored.[4]

There is no dispute that Mr. Falls was convicted of involuntary manslaughter in Virginia, a felony that constitutes an infamous crime in Tennessee. His loss of voting rights survives his sentence and remains in effect until his right of suffrage is restored. It is also undisputed that Mr. Falls was disqualified from exercising the right of suffrage when he moved to Tennessee in 2018. The central question in this appeal is whether, pursuant to Tenn. Code Ann. § 2-19-143(3), Mr. Falls was immediately re-enfranchised in Tennessee when the Governor of Virginia restored his Virginia citizenship rights in 2020, or whether he is subject to the additional preconditions to re-enfranchisement established by Tenn. Code Ann. § 40-29-202(b) and (c).

In 2006, the General Assembly enacted Tenn. Code Ann. §§ 40-29-201 to -205, providing a voting-rights-restoration pathway to "any person who has been disqualified from exercising" the right to vote due to being convicted of an infamous crime if he or she meets certain criteria.[5] Tenn. Code Ann. § 40-29-201(a). Tennessee Code Annotated section 40-29-201(a) states in full that the "provisions and procedures of this part shall apply to and govern restoration of the right of suffrage in this state to any person who has been disqualified from exercising that right by reason of a conviction in any state or federal court of an infamous crime."[6] Tennessee Code Annotated section 40-29-202 states:

> (a) A person rendered infamous and deprived of the right of suffrage by the judgment of any state or federal court is eligible to apply for a voter registration card and have the right of suffrage restored upon:

---

[4] We note that there is a gap in Tennessee's disenfranchisement history in which persons convicted of an infamous crime between January 15, 1973 and May 17, 1981 are not deprived of the right to vote. *See Crutchfield v. Collins*, 607 S.W.2d 478, 481 (Tenn. Ct. App. 1980); *see also Restoration of Voting Rights*, TENNESSEE SECRETARY OF STATE, https://sos.tn.gov/elections/guides/restoration-voting-rights (last accessed Dec. 13, 2021).

[5] Tennessee Code Annotated sections 40-29-201 to -205 were ostensibly adopted to "streamline and standardize" felony disenfranchisement laws and to eliminate "any requirement that a person seeking [voting] restoration petition for that right and litigate the issue in court." *Voting Rights Restoration Efforts in Tennessee*, BRENNAN CENTER FOR JUSTICE (Feb. 9, 2018), https://www.brennancenter.org/our-work/research-reports/voting-rights-restoration-efforts-tennessee; *See* Tenn. Code Ann. §§ 40-29-201 to -204 (providing a pathway for persons rendered infamous to petition the circuit court for restoration of their right to vote).

[6] Tennessee Code Annotated section 40-29-204 provides a list of certain persons with criminal convictions that will "never be eligible to register and vote in this state" including, *inter alia*, those convicted for voter fraud, treason, murder in the first degree, or aggravated rape.

(1) Receiving a pardon, except where the pardon contains special conditions pertaining to the right of suffrage;

(2) The discharge from custody by reason of service or expiration of the maximum sentence imposed by the court for the infamous crime; or

(3) Being granted a certificate of final discharge from supervision by the board of parole pursuant to § 40-28-105, or any equivalent discharge by another state, the federal government, or county correction authority.

(b) Notwithstanding subsection (a), a person shall not be eligible to apply for a voter registration card and have the right of suffrage restored, unless the person:

(1) Has paid all restitution to the victim or victims of the offense ordered by the court as part of the sentence; and

(2) Beginning September 1, 2010, notwithstanding subsection (a), a person shall not be eligible to apply for a voter registration card and have the right of suffrage restored, unless the person has paid all court costs assessed against the person at the conclusion of the person's trial, except where the court has made a finding at an evidentiary hearing that the applicant is indigent at the time of application.

(c) Notwithstanding subsection (a), a person shall not be eligible to apply for a voter registration card and have the right of suffrage restored, unless the person is current in all child support obligations.

We must apply Tenn. Code Ann. § 2-19-143(3) and Tenn. Code Ann. § 40-29-202 to the case at hand keeping in mind that "'[s]tatutes that relate to the same subject matter or have a common purpose must be read *in pari materia* so as to give the intended effect to both.'" *Coffee Cnty. Bd. of Educ.*, 574 S.W.3d at 846 (quoting *In re Kaliyah S.*, 455 S.W.3d at 552). These statutes both relate to the restoration of an out-of-state felon's right to vote. Mr. Falls insists that Tenn. Code Ann. § 2-19-143(3) functioned to automatically restore his right to vote once his citizenship rights were restored in Virginia. However, adopting Mr. Falls's interpretation would require us to ignore another section of the code that our legislature implemented to "govern restoration of the right of suffrage in this state." Tenn. Code Ann. § 40-29-201(a). We must read the two statutes *in pari materia* rather than in isolation.

Mr. Falls is now a citizen of the state of Tennessee. Tennessee is empowered to legislate different standards than other states for restoration of its citizens' rights to vote. When Mr. Falls moved to Tennessee in 2018, he was disqualified from voting in Tennessee because of his Virginia conviction: "No person who has been convicted in another state of a crime or offense which would constitute an infamous crime under the laws of this state, regardless of the sentence imposed, shall be allowed to register to vote or vote at any election in this state." Tenn. Code Ann. § 2-19-143(3). Pursuant to Tenn. Code Ann. §

40-20-201, he is, regardless of his Virginia pardon in 2020, a "person who has been disqualified from exercising [the right to vote] by reason of a conviction in any state or federal court of an infamous crime." Tenn. Code Ann. § 40-29-201. Therefore, the procedures and provisions of Tenn. Code Ann. § 40-29-202 apply to him. Those procedures impose preconditions to the restoration of a convicted felon's voting rights related to the satisfaction of certain court-ordered financial obligations. Specifically, Mr. Falls was required to confirm he had paid restitution and court costs related to his conviction as well as to show he was current on child support obligations. "Tennessee possesses valid interests in promoting payment of child support, requiring criminals to fulfill their sentences, and encouraging compliance with court orders." *Johnson*, 624 F.3d at 747. It is undisputed that Mr. Falls has not provided evidence that these financial obligations have been satisfied, and therefore he is not eligible to vote in Tennessee until he does so.

We have reviewed the caselaw Mr. Falls cites in support of his assertion that Tenn. Code Ann. § 2-19-143(3) operated to immediately re-enfranchise him such that he was not subject to Tenn. Code Ann. § 40-29-202, and we are not persuaded that the cases he cites operate to vitiate the additional re-enfranchisement requirements of Tenn. Code Ann. § 40-29-202. Indeed, none of the cases he cites—*Burdine v. Kennon*, 209 S.W.2d 9 (Tenn. 1948); *Crutchfield v. Collins*, 607 S.W.2d 478 (Tenn. Ct. App. 1980); *Gaskin v. Collins*, 661 S.W.2d 865 (Tenn. 1983)—involve the interplay between and applicability of the statutes at issue in this case. While these cases do stand for the proposition that our general assembly must specifically enact legislation before persons convicted of infamous crimes are disenfranchised or re-enfranchised, our legislature has done so via Tenn. Code Ann. §§ 40-20-112; 2-19-143; and 40-29-202. We cannot put Tenn. Code Ann. § 2-19-143 into a silo and ignore subsequent legislative enactments regarding re-enfranchisement. Because we must construe the statutes in *pari materia* and harmoniously, with more recent enactments taking precedence, we hold that the requirements of Tenn. Code Ann. §§ 40-29-201 to -205 supplement the provisions of Tenn. Code Ann. § 2-19-143 by providing additional requirements for the reinstatement of voting rights for convicted felons regardless of their state of conviction. *See Coffee Cnty. Bd. of Educ.*, 574 S.W.3d at 846; *O'Neal*, 2016 WL 4083466, at *4. The additional prerequisites outlined in Tenn. Code Ann. § 40-29-202 apply to Mr. Falls, and he cannot be re-enfranchised until he provides evidence that he has paid court-ordered restitution and costs related to his crimes (if applicable) and has satisfied his child support obligation (if any exists).

CONCLUSION

For the foregoing reasons, we affirm the trial court's entry of summary judgment to the Defendants. Costs of this appeal are assessed against the appellant, Ernest Falls, for which execution may issue if necessary.


_/s/ *Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE