NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0332n.06

No. 22-5703

DERIC JAMES LOSTUTTER, ROBERT CALVIN LANGDON, and BONIFACIO R. ALEMAN,

  Plaintiffs-Appellants,

v.

COMMONWEALTH OF KENTUCKY,

  Defendant,

ANDREW G. BESHEAR, in his official capacity as Governor of Kentucky,

  Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
Jul 20, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

OPINION

Before: BOGGS, WHITE, and READLER, Circuit Judges.

**WHITE, Circuit Judge.** In this First-Amendment challenge to Kentucky's felon-reenfranchisement scheme, Plaintiffs Deric Lostutter, Robert Langdon, and Bonifacio Aleman appeal the dismissal of their claims for lack of standing, contending that they satisfied all standing requirements under the unfettered-discretion doctrine.[1] Because Plaintiffs concede that their argument turns on a finding that Kentucky's voting-rights restoration process constitutes an administrative licensing or permitting scheme, and we conclude that this is not the case, we affirm the district court's dismissal of all claims without prejudice.

---

[1] The Supreme Court has held that, when bringing a facial challenge to a licensing or permitting scheme that allegedly gives government officials unfettered discretion to grant or deny licenses, a plaintiff need not apply for and be denied a license to challenge such a scheme's constitutionality. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755–56 (1988). Rather, "a licensing provision coupled with unbridled discretion itself amounts to an actual injury." *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 351 (6th Cir. 2007) (citations omitted).

**I.**

**A.**

Section 145 of the Kentucky Constitution strips convicted felons of the right to vote:

> Persons convicted in any court of competent jurisdiction of treason, or felony, or bribery in an election, or of such high misdemeanor as the General Assembly may declare shall operate as an exclusion from the right of suffrage, but persons hereby excluded may be restored to their civil rights by executive pardon.

Ky. Const. § 145. A Kentucky statute outlines the process by which a person's right to vote may be restored: a convicted felon may submit a request for restoration of civil rights to the Kentucky Department of Corrections (KDOC) and, if KDOC determines that the felon qualifies as an "eligible offender,"[2] the request will be forwarded to the Governor "for consideration of a partial pardon." Ky. Rev. Stat. Ann. § 196.045. The Governor then exercises his or her complete discretion in granting or denying the request. R. 57-1, PID 788 ("It is the prerogative of the Governor afforded him or her under the Kentucky Constitution to restore these rights.").

**B.**

In the operative complaint, eight plaintiffs—all disenfranchised residents of Kentucky with felony convictions who wish to vote in future elections—sued the Kentucky Governor in his official capacity under 42 U.S.C. § 1983, alleging that Kentucky's voting-rights restoration scheme violated the First Amendment because it (1) provided unfettered discretion to the Governor to restore civil rights (Count 1), and (2) did not contain a limitation on the time to exercise that discretion (Count 2). Essentially, Plaintiffs argued that Kentucky's reenfranchisement process operated as an administrative licensing or permitting scheme, and therefore it must adhere to the

---

[2] Kentucky law defines an "eligible felony offender" as a person convicted of one or more felonies who has received a final discharge or expiration of sentence, does not have any pending warrants, charges, or indictments, and does not owe any outstanding restitution. Ky. Rev. Stat. Ann. § 196.045(2).

constitutional standards applied when officials grant or deny licenses or permits to engage in First Amendment-protected activity. The operative complaint sought a declaration that the restoration scheme violated the First Amendment, and a permanent injunction ordering the Governor to establish a new reenfranchisement scheme that "restores the right to vote to felons based upon specific, neutral, objective, and uniform rules and/or criteria[.]" R. 31, PID 357-58.

While cross-motions for summary judgment were pending before the district court, Kentucky Governor Andrew Beshear issued Executive Order (EO) 2019-003, providing that a convicted felon's right to vote would be automatically restored upon the final discharge or expiration of his or her sentence, provided the crime of conviction was a Kentucky offense not involving treason, bribery in an election, criminal or fetal homicide, second-degree assault or assault under extreme emotional disturbance, first-degree strangulation, human trafficking, or violence as defined by Kentucky law. Three plaintiffs automatically became eligible to vote under EO 2019-003 and voluntarily dismissed their claims as moot. Five months later, the district court dismissed all remaining Plaintiffs' claims as moot on the basis that EO 2019-003 appeared to provide the relief they requested: non-arbitrary criteria to guide the process for restoration of voting rights.

Plaintiffs timely appealed to this court, and we concluded that EO 2019-003 failed to provide relief to Lostutter, Langdon, and possibly Aleman—because although it may have "established a separate non-discretionary restoration track for certain felons who qualify," Lostutter and Langdon did not qualify for that track "because they were convicted, respectively, of a federal offense and of second-degree assault under Kentucky law." *Lostutter v. Kentucky*, No. 21-5476, 2021 WL 4523705, at *2 (6th Cir. Oct. 4, 2021). "For felons like them, EO 2019-003 left intact the discretionary scheme set out in Ky. Const. § 145 and Ky. Rev. Stat. Ann. § 196.045,

which is the same one challenged in the operative complaint. Thus, EO 2019-003 did not remove the harms that Lostutter and Langdon allege, and the case remains suitable for judicial determination." *Id.*[3] We reversed and remanded for further proceedings.

## C.

On remand, when faced with the same cross-motions for summary judgment, the district court again dismissed the remaining three Plaintiffs' claims, this time for lack of standing. It held:

> Here, it is not immediately apparent that Plaintiffs have suffered an injury in fact because they have never participated in the reenfranchisement scheme they challenge. . . . Langdon has applied for restoration of his right to vote, and he states that his application is pending before the Governor. (R. 31 ¶ 7.) Aleman and Lostutter have not applied. (R. 31 ¶ 7.)

R. 68, PID 846.[4] It also rejected Plaintiffs' argument that Kentucky's reenfranchisement process constituted an administrative licensing or permitting scheme, such that standing existed under the unfettered-discretion doctrine without regard to whether Plaintiffs applied for and were denied restoration of their rights. The district court explained:

> "Licensing" generally refers to "[a] governmental body's process of issuing a license," and a "license" is "permission, usually revocable, to commit some act that would otherwise be unlawful." *Licensing*, *Black's Law Dictionary* (11th ed. 2019). . . . [A] "permit" is defined as the certificate or official written statement evidencing that someone has permission or the right to do something. *Permit*, *Black's Law Dictionary* (11th ed. 2019).
>
> A pardon, on the other hand, is "[t]he act . . . of officially nullifying punishment or other legal consequences of a crime." *Pardon*, *Black's Law Dictionary* (11th ed.

---

[3] Regarding Aleman, we noted that he

[m]aintain[ed] that he does not qualify for automatic restoration of his right to vote because he was convicted of first-degree robbery. However, it appears that only first-degree robberies committed after July 15, 2002, are considered disqualifying violent offenses, Ky. Rev. Stat. Ann. § 439.3401(8), and the record suggests that Aleman was convicted of this offense in 1997. The district court should clarify Aleman's status on remand.

*Id.* at *2 n.4. On remand, Plaintiffs confirmed that Aleman's claims were not moot because he was convicted of a felony in Indiana, and out-of-state convictions are excluded under EO 2019-003.

[4] Aleman has since submitted his application, according to his counsel. At the time of oral argument, it remained pending before the Governor.

2019); *see also Fletcher*, 192 S.W.3d at 362 ("A 'pardon' is the act or an instance of officially nullifying punishment or other legal consequences of a crime.") (cleaned up). Receipt of a pardon can give a pardonee permission to do something that would otherwise be unlawful, such as vote, and in that narrow respect it bears some superficial similarity to a license. But a pardon cannot be characterized as a mere license to vote—restoration of the right to vote is just one of several potential effects of a pardon.

. . .

A pardon is also retrospective, as opposed to prospective. A pardon nullifies the legal consequences of one's past actions, whereas a license prospectively grants one permission to do something that would otherwise result in legal consequences.

. . .

A pardon is fundamentally different than a license and cannot be fairly characterized as a mere license to vote. Restoring a felon's right to vote is just one of many possible effects of a pardon. Beyond that single superficial similarity, a license and a pardon bear virtually no resemblance to one another. The nature of a pardon is to extend grace to a person with regard to certain consequences of their actions. A license, on the other hand, simply gives a person permission to engage in regulated activity. The Plaintiffs' argument is simply incorrect—in Kentucky, an executive pardon is not a license.

R. 68, PID 847-49 (footnote omitted). It thus concluded that *City of Lakewood* and its progeny did not apply, and dismissed the remaining Plaintiffs' claims without prejudice for lack of standing. Plaintiffs timely appealed.

## II.

Plaintiffs maintain that dismissal on jurisdictional grounds was improper because the unfettered-discretion doctrine confers standing without regard to whether they actually applied for, and were denied, restoration of their right to vote. However, Plaintiffs also urge this court to "construe the district court's opinion to have reached and ruled on the merits" and "review [the] decision accordingly." Appellant Br. at 21; Oral Arg. at 8:20-8:50. In either case, Plaintiffs conceded at argument that their claims rest entirely on the contention that Kentucky's voting-rights

restoration process constitutes a licensing or permitting scheme. Because this underlying argument lacks merit, we affirm the district court's dismissal of all claims.

Contrary to Plaintiffs' assertions that Kentucky's voting-rights restoration scheme is fundamentally different from a pardon, the Kentucky Constitution expressly characterizes felon reenfranchisement as a type of executive pardon. Ky. Const. § 145 (providing that felons excluded from the franchise "may be restored to their civil rights by executive pardon"). Associated statutes and Kentucky caselaw likewise refer to the Governor's discretionary power to restore voting rights as a "partial pardon." Ky. Rev. Stat. Ann. § 196.045(1)(e) (directing KDOC to "[f]orward information on a monthly basis of eligible felony offenders who have requested restoration of rights to the Office of the Governor for consideration of a partial pardon"); *Anderson v. Commonwealth*, 107 S.W.3d 193, 195 (Ky. 2003) (holding that a "partial pardon" granted pursuant to Sections 145 and 150 of the Kentucky Constitution "only restored [an individual's] right to vote and to hold office and did not restore his 'right' to be a juror"); *Cheatham v. Commonwealth*, 131 S.W.3d 349, 351 (Ky. Ct. App. 2004) (holding that a "partial pardon" restoring a felon's rights to vote and hold public office did not encompass restoration of his right to possess a firearm). Plaintiffs' suit is therefore a challenge to an aspect of Kentucky's pardon regime, whether they characterize it that way or not. And receiving an executive pardon—partial or complete—is fundamentally different from obtaining an administrative license or permit.

First, as the district court explained, pardons are retrospective in the sense that they look backwards and excuse—indeed, nullify the consequences of—past misconduct. A license, in contrast, is usually prospective in that it looks forward and grants permission to engage in some future conduct. So, while a governor cannot pardon future crimes, licenses typically grant permission for an activity that has not yet occurred. Further, the Governor accurately observes

that a partial pardon is a one-time act of clemency, while a typical licensing or permitting scheme is ongoing—that is, the license or permit must be renewed periodically.[5]   Third, felon reenfranchisement in Kentucky derives from the Governor's executive clemency power, which the Supreme Court has rarely subjected to judicial review.  *See Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 276 (1998) (reiterating that as a fully discretionary "matter of grace," pardons and commutation decisions "have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review," therefore "[t]he Due Process Clause is not violated where, as here, the procedures in question do no more than confirm that the clemency and pardon powers are committed, as is our tradition, to the authority of the executive" (quoting *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981))); *see also Herrera v. Collins*, 506 U.S. 390, 413-15 (1993) (outlining the history of the federal pardon and state-level clemency schemes). In contrast, a licensing scheme regulating First Amendment-related conduct is typically grounded in the State's authority to promote public safety and well-being.  *See Cox v. New Hampshire*, 312 U.S. 569, 574 (1941) ("The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend.").  Such authority, when used to curtail free speech, is subject to extensive judicial review.  *See id.* at 576 (holding that licensing schemes regulating speech must

---

[5] Plaintiffs contest this characterization, arguing that (1) it "assumes that an individual will only face felony disenfranchisement once in their lifetime"; and (2) "if the restoration application is denied one or more times, the licensing process will not be a one-time encounter." Reply Br. at 15. But both hypotheticals ignore the true distinction between the two processes:  after a *successful* reenfranchisement, a felon need not re-apply for a new pardon every election cycle for fear that his right to vote has expired.  A typical license or permit, on the other hand, must be routinely re-granted; should the applicant let it lapse, he or she may no longer engage in the regulated conduct.  A partial pardon can therefore be fairly characterized as a "one-time" act of the clemency in the sense that *at the time it is granted* there is no predetermined expiration date for the restored right to vote, whereas the effects of a typical license or permit last only a fixed amount of time before they expire.

serve an important government interest); *see also Kunz v. New York*, 340 U.S. 290, 293-94 (1951) (noting that the Supreme Court has "consistently condemned licensing systems which vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places" and listing cases). Plaintiffs fail to explain why we should conflate the distinct processes of licensing and pardons, rooted as they are in separate provisions of Kentucky law, subject to differing levels of judicial scrutiny by the Supreme Court, and implemented to accomplish unrelated goals.

Perhaps most importantly, a pardon restores the felon to the status quo before the conviction, in that he or she regains a right once held but lost due to illegal conduct. Permits or licenses regulating First Amendment activity by their nature do not restore any "lost" rights; they only regulate how persons may engage in or exercise a right they already possess. So, while a person applying for a newspaper rack or parade permit is attempting to exercise his or her First Amendment right to freedom of speech, a felon can invoke no comparable right when applying to the Governor for a pardon because the felon was constitutionally stripped of the First Amendment right to vote. *Compare City of Lakewood*, 486 U.S. at 768 (explaining that the true "activity" at issue was "the circulation of newspapers, which is constitutionally protected"); *with Dumschat*, 452 U.S. at 467 (holding that "[a] state cannot be required to explain its reasons for a [commutation] decision when it is not required to act on prescribed grounds," because the power vested in the State to commute sentences "conferred no rights on respondents beyond the right to seek commutation"), *and Ohio Adult Parole Auth.*, 523 U.S. at 282–83 (holding that a Governor's executive discretion in matters of clemency "need not be fettered by the types of procedural protections sought by respondent" because there was "no substantive expectation of clemency"). Accordingly, Kentucky requires felons to fill out an "application for the *restoration* of civil rights,"

R. 57-1, PID 787 (emphasis added), which properly reflects the fact that the felon lacks any fundamental interest to assert and seeks to regain his or her interest through the clemency process, rather than a "permit to vote," which would suggest that the felon already has an intrinsic right to vote, and must merely go through the proper regulatory hoops to exercise it. *Cf. Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) (explaining that a state may constitutionally strip convicted felons of their right to vote, and that the plaintiffs, having constitutionally lost that right, lacked any fundamental interest to assert under the First Amendment). Based on these significant distinctions, we agree with the district court that Kentucky's voting-rights restoration scheme is different in kind from an administrative licensing or permitting scheme.

Plaintiffs offer no authority to the contrary equating a partial pardon to a type of administrative license, or even treating the two similarly. Plaintiffs' cited caselaw concerns only administrative schemes that were expressly designated as granting licenses or permits. And they fail to provide a single case in which a court interpreted a restored right to vote as a license or permit to vote. The State, on the other hand, points to Eleventh Circuit precedent holding that First Amendment cases invoking the unfettered-discretion doctrine are "inapposite to a reenfranchisement case." *See Hand v. Scott*, 888 F.3d 1206, 1210 (11th Cir. 2018). In *Hand,* disfranchised felons argued that Florida's reenfranchisement regime facially violated the First Amendment because it vested Florida's Executive Clemency Board with "unfettered discretion" to engage in a "standard-less process of arbitrary and discriminatory decision-making, which is untethered to any laws, rules, standards, criteria, or constraints of any kind, and unconstrained by any definite time limits," thereby abridging their right to vote and creating an impermissible risk of "arbitrary, biased, and/or discriminatory treatment." *Id.* (quoting Plaintiffs' Motion for Summary Judgment at 16, 18).

The Florida felons relied on several of the same First Amendment cases cited by Plaintiffs, including *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992), and *City of Lakewood,* 486 U.S. 750. But on appeal, the Eleventh Circuit rejected the felons' theory and held that "this precedent [did] not bear directly on the matters presented" because none of the cases "involved voting rights or even mentioned the First Amendment's interaction with the states' broad authority expressly grounded in § 2 of the Fourteenth Amendment to disenfranchise felons and grant discretionary clemency." *Id.* Although the Eleventh Circuit did not directly address standing, its holding on the merits lends support to the State's argument that Plaintiffs' cited authority is inapt.

Plaintiffs resist this conclusion and maintain that the district court "erred by assessing whether full pardons function as licenses to vote instead of focusing on the sole and narrow question before it: whether the grant or denial of a voting rights restoration application functions as vote licensing." Appellant Br. at 40. True, in two paragraphs the district court discussed the nature of a complete pardon, although the relevant Kentucky statute characterizes voting restoration as only a "partial pardon." But this does not render the core thesis of the district court opinion incorrect: an executive pardon in general functions differently than an administrative license or permit. The district court's overall analysis of the differences between a license and a pardon remains sound. For example, the distinction between the prospective nature of a license versus the retrospective nature of a pardon applies to both a partial and a full pardon. So, while the district court might have avoided a discussion of full pardons, the two paragraphs that the district court devoted to that topic do not render the opinion as a whole incorrect.

Plaintiffs also contend that the district court erroneously placed "undue weight upon the 'clemency' label associated with voting rights restoration in Kentucky law." Appellant Br. at 38. Plaintiffs insist that "notwithstanding the labels used under Kentucky law, the state's system of

10

giving its governors sole power to restore the right to vote to individuals with felony convictions—unbounded by any rules or criteria—is in all material respects a completely arbitrary licensing system no different from those long prohibited in the First Amendment context." *Id.* at 14. Yet Plaintiffs never persuasively explain *why* voting restoration is more similar to a licensing scheme than to a partial executive pardon. They never list the defining features of a licensing or permitting scheme, much less explain how the voting-rights restoration process possesses those characteristics. Plaintiffs merely conclude that "[w]hen it comes to the functionality of Kentucky's voting rights restoration system, in all material respects, it operates as an administrative licensing scheme that selectively confers a right to vote upon certain individuals with felony convictions," without ever showing the concrete similarities between voting-rights restoration and obtaining a license. Appellant Br. at 39.

Plaintiffs' only proffered similarity between the two concepts is that Kentucky's reenfranchisement scheme grants felons permission to vote in future elections, just as a license or permit grants permission to engage in conduct like a parade. True, the result of the felon reenfranchisement scheme is that a felon is "allowed" to vote again, where previously prohibited. And the result of a license or permit is that a person is "allowed" to engage in regulated conduct, where they were previously prohibited. But this superficial parallel does not transform a partial executive pardon into an administrative license. Mere similarity in result does not change the nature of the vehicle used to reach that result, and Kentucky law is clear that it restores felons their voting rights through a partial executive pardon, not through the granting of an administrative license. And for the reasons discussed above, extending an executive pardon is fundamentally different from granting a permit or license. So, regardless of any similarity in outcome—in that a

11

pardoned felon and a licensed civilian may both engage in conduct previously forbidden—the vehicles to achieve that outcome remain fundamentally different.

Finally, Plaintiffs argue that "[c]lemency rules and procedures are not immune from constitutional scrutiny." Appellant Br. at 43. That may be. But the district court never found to the contrary. It held only that Kentucky's voting-rights restoration process is not an administrative licensing or permitting scheme, therefore *City of Lakewood* did not allow for an exception to the traditional rules of standing. Affirming this decision does not insulate Kentucky's restoration process from constitutional review. It merely requires Plaintiffs to satisfy either the traditional rules of standing or some exception other than *City of Lakewood*'s unfettered-discretion doctrine before they may bring suit.

In sum, the district court correctly held that a partial executive pardon restoring the right to vote is not a permit or license to vote, and thus the unfettered-discretion doctrine does not apply. The *City of Lakewood* line of cases is therefore inapplicable and dismissal for lack of standing was proper.

### III.

For the reasons set out above, we AFFIRM the district court's dismissal of all claims without prejudice.